WEBER IMPLEMENT COMPANY, Respondent, v. JOSEPH DUNARD, Appellant.

St. Louis Court of Appeals. Submitted April 15, 1909. Opinion filed June 8, 1909.

1. CHATTEL MORTGAGES: Evidence: Variance Between Note and Chattel Mortgage: Parol Evidence to Explain. In an action of replevin, where defendant claims title to the property replevied as purchaser at a sale under a chattel mortgage, the fact that there was a difference in the description of the mortgaged property as contained in said mortgage and the promissory note it was given to secure, would not render said mortgage and note inadmissible in evidence, but parol evidence, tending to explain said difference, should be admitted. If the note evidences the debt secured, or intended to be secured, the variance in description would be immaterial.

2. ————: ————: ————: Question for Jury. Where parol evidence is introduced to explain such difference in description, the identity of the debt is a question for the jury to determine.

3. ————: Fraud: Payment: Question for Jury: Case Stated. In an action in replevin by the holder of a chattel mortgage executed by defendant's father to secure promissory notes made by defendant and his father, there was evidence that a note for $426 and a chattel mortgage to secure it on the same property covered by plaintiff's mortgage, executed by defendant's father prior to the time plaintiff's mortgage was executed, were acquired by defendant by assignment from the payee, in accordance with an arrangement between defendant and his father, whereby he was to pay said note and have it endorsed to him for his security, and no payment on the note having been made to defendant by his father, the former advertised the mortgaged property and at the sale thereof himself became the purchaser for $505, no part of which amount was paid to his

father, but which he kept to liquidate his father's indebtedness to him, it was a question for the jury to determine whether the debt secured by said chattel mortgage was an honest indebtedness and whether it had been paid.

4. ————: **Failure of Consideration: Second Mortgage: Right of Prior Mortgagee to Question.** In replevin by a second chattel mortgagee, against one claiming under a prior mortgage, the question of failure of consideration of the second mortgage as between plaintiff and the mortgagor is immaterial.

5. ————: **Estoppel: Agency: Effect of Participating in Mortgage Sale.** The jury would have the right to find that plaintiff was estopped to dispute whatever title was acquired by defendant at a sale under a chattel mortgage, where, after such sale was concluded, the agents of plaintiff, a junior mortgagee, insisted upon a resale, and were present at and participated in such resale.

6. ————: **Rights of Purchaser at Sale.** A purchaser at a sale under a chattel mortgage may assert whatever title he acquired thereby as against a junior mortgagee, although such purchaser is one of the makers of the notes secured by such junior mortgage and is indebted thereon.

Appeal from Lincoln Circuit Court.—*Hon. Jas. D. Barnett,* Judge.

REVERSED AND REMANDED.

*Avery, Young & Woolfolk* for appellant.

(1) The four-hundred-twenty-six-dollar note given by Charles Dunard to Reeves & Company was sufficiently described in the chattel mortgage on the engine in controversy and was legal evidence in the case and should have been submitted. Wood v. Weimar, 104 U. S. 786; 5 Am. and Eng. Ency. of Law, p. 969; Webb v. Stone, 24 N. H. 282; Paine v. Benton, 32 Wis. 491; Boody v. Davis, 51 Am. Dec. 210; Merrills v. Swift, 46 Am. Dec. 315. (2) Parol evidence is admissible to show the real purpose for which the chattel mortgage is given. 5 Am. and Eng. Ency. of Law, 966; McKinster v. Babcock, 26 N. Y. 378; Lawrence v. Tucker, 23 Howard (U. S.) 14. (3) It makes no difference that

the note secured, to-wit, the four-hundred-twenty-six-dollar note, was pre-existing indebtedness when the chattel mortgage was given. 5 Am. and Eng. Ency. of Law, 966; Turner v. McFee, 61 Ala. 468; Butters v. Haughwout, 89 Am. Dec. 401; Gilchrist v. Gough, 30 Am. Rep. 250; Henry v. Vilet, 29 Am. St. Rep. 478. (4) The office of the chattel mortgage is to secure the debt and the note itself may be identified by parol evidence. 5 Am. and Eng. Ency. of Law, 969; Clark v. Hyman, 39 Am. Rep. 160; 1 Cobbey on Chattel Mortgages, sec. 471, p. 629. (5) The evidence showed that Joseph Dunard, the defendant, was in possession as assignee of the original mortgagee, Reeves & Company, that the debt secured in the chattel mortgage was due and had not all been discharged, his possession was, therefore, lawful and plaintiff who had the second mortgage could not lawfully take possession from Joseph Dunard without discharging or paying off said mortgage. Pace v. Pierce, 4 Mo. 393; Lacy, trustee, v. Giboney, 36 Mo. 320; Bank v. Totten, 94 Mo. App. 596. (6) Plaintiff acted on the assertion of defendant and Mr. Young that there was a small balance actually due on the debt secured by the Reeves mortgage. Defendant knew better. Bank v. Ragsdale, 171 Mo. 168; Fowler v. Carr, 63 Mo. App. 486; State ex rel. v. Lumber Co., 77 Mo. App. 538; Michael v. Ford, 34 Mo. App. 630; Smith v. Roach, 59 Mo. App. 114. (7) As to whether or not the court regarded the $426 note as being covered by the Reeves mortgage, seems to be immaterial. It and its assignment were admitted in evidence. It should be noticed, however, that the defendant himself pleads the absence of indemnity and seeks to bind us to that note on specifically alleged grounds that we deceived and defrauded Joe into selling under that note. There was certainly a failure of proof as to this, and further discrepancies in the description appeared when the note was produced. He selected his ground and is probably limited by its boundaries. Lindsay v. Davis, 30 Mo. 406; Jackson v.

Hardin, 83 Mo. 175. In view of the fact that Joe was fully advised as to all things connected with the Reeves transaction, and that plaintiff was acting in the dark as to practically everything connected with Joe's dealings in the matter and that Joe claims to have been the purchaser, it seems to us that the sale, even if valid in form, does not change the status of the parties at all. Joe, by his own statement, had owned the property since 1906, subject to our mortgage, the sale could not affect the situation a particle even if the assignment to him had been a *bona fide* one, based on actual payments made by him. Kemper v. Berkley, 79 Mo. App. 578; Byrne v. Carson, 70 Mo. App. 127; Moon v. Thompson, 40 Mo. App. 195; Munton v. Irwin, 43 Mo. 153. (8) Default in the payment of the debt and the defendant's possession at the time of the suit are all admitted in the pleadings, and proven by the papers themselves. This makes a *prima facie* case on which plaintiff was entitled to a verdict. Turner v. Langdon, 85 Mo. 438.

*Wm. A. Dudley* and *J. R. Palmer* for respondent.

(1) There was no error in excluding the evidence of the failure of the I. S. separator to do satisfactory work. (a) Because there was no basis for the proof, under the pleadings. The warranty was conditional, waiver of the conditions was not pleaded, nor were the conditions and performance of them pleaded. Nichols v. Larkin, 79 Mo. 264; Bank v. Barts, 130 Mo. App. 635; Nichols-Shepard Co. v. Rhoadman, 112 Mo. App. 299; Osborne v. Henry, 70 Mo. App. 19; Kingman v. Schulenberger, 64 Mo. App. 548; Boyer v. Neel, 50 Mo. App. 26. (b) Proof of the rescission and return of the property having utterly failed, and there being no counterclaim of damages for breach of warranty pleaded, the inquiry as to the defects in the machine was utterly irrelevant. Crenshaw v. Looker, 185 Mo. 375; McCormick v. Crawford, 98 Mo. App. 319. (2) There was

no error in directing a verdict for the plaintiff, because:
(a) The value of the engine was less than the amount
of the notes by the very terms of the answer. Dodd v.
Wilson, 26 Mo. App. 462. (b) Joseph Dunard owed
these notes and his liability to pay them was asserted
by his counsel as a basis for proving defects in the oper-
ation of the machinery. The utmost that could have
been required of plaintiff would have been to have re-
deemed by repaying Joe the $500 he claimes to have
paid Reeves; this would amount to a mere credit on the
notes leaving a balance of near $490 due plaintiff under
the pleadings. It is possible that the defendant might
have had an adjustment of these matters in this case,
but he neither claimed it in his answer nor complains of
the failure to grant it in his motion for new trial or in
his assignments of errors here. Workman v. Warder,
28 Mo. App. 1; McCormick v. Hill, 104 Mo. App. 544;
Freeman v. Lavenue, 99 Mo. App. 173; Babb v. Talcott,
47 Mo. 343; Dodd, Brown & Co. v. Wilson, 26 Mo. App.
462. (c) But, even had there been a basis in the
pleadings or in the evidence for an adjustment and re-
demption, as suggested in the last paragraph, appellant
is not entitled to the remedy, for the reason that, person-
ally owing the debt secured by the Weber mortgage, his
position is nearly identical with that of a man who buys
mortgaged property assuming payment of the incum-
brance, his note supplying the promise to pay off the
debt, and it was his duty to redeem by paying Weber's
claim before meddling with their possession taken un-
der the mortgage. Burnside v. Feztner, 63 Mo. 107;
Keefer v. Shaklett, 85 Mo. App. 449; Hall v. Morgan,
79 Mo. 47; Wonderly v. Giessler, 118 Mo. App. 708;
Childs' Suretyship and Guaranty, p. 15. (d) Joe,
having bought the engine subject to the Weber notes,
which he had promised to pay, no equitable interest to
keep the Reeves mortgage alive remained and a merger
took place. Wonderly v. Giessler, supra, pp. 720-721;
Bispham's Principles of Equity (3rd Ed.), sec. 160.

(3) There is one element of an estoppel entirely absent from the facts of this sale.

STATEMENT.—This is an action of replevin to recover possession of a 16-horsepower Reeves & Company engine, No. 2099, commenced in the circuit court of Lincoln county. The petition is in usual form, setting up that plaintiff being entitled to the possession of a certain engine, formerly owned by one Charles Dunard, and of the value of $500, that the defendant, Joseph Dunard, some time in April, 1907, wrongfully took it from the possession of plaintiff, to plaintiff's damage in the sum of $500. Demand is for judgment for the recovery of the possession of the property, and for damages, or, on failure to recover the property, for the value thereof.

The answer, after a general denial, sets up that defendant purchased from Reeves & Company certain notes secured by chattel mortgage of date July 23, 1902; that the notes were executed by Charles Dunard and one John Hechler to Reeves & Company; that the notes were secured by chattel mortgage with power of sale, recorded in book 46, records of Lincoln county, at page 283, executed by Charles Dunard; that the notes secured by the chattel mortgage aggregated $1,655.55; that all of them had been paid but one for $426.00; that defendant, Joseph Dunard, purchased the chattel mortgage and the note for $426; and that this $426 note, when past due, had, with the mortgage, been duly assigned to Joseph Dunard, the defendant; that this note represented part of the purchase price of a 16-horsepower Reeves & Company engine, No. 2099, with all fixtures and appendages, also a wind stacker with fixtures, a belt, saw mill complete and a circular saw. The answer also sets out that the engine described in the note for $426 was described as a 13-horsepower Reeves & Company engine, whereas it really stands for a part

140 App.—31

purchase price of a 16-horsepower Reeves & Company engine, and that the engine for which it, with the other notes, was really given and which was the engine described in the chattel mortgage, was a 16-horsepower and not a 13-horsepower, and it is averred that the chattel mortgage made by Charles Dunard to Reeves & Company was a first and prior mortgage on the property described in it, including this 16-horsepower Reeves & Company engine, No. 2099. The answer further avers that after purchase by and assignment of the note and chattel mortgage to defendant by Reeves & Company and after the maturity of the note, Joseph Dunard had demanded payment for the balance due on the note from Charles Dunard; that Charles refused payment; that Joseph, the defendant, under the terms of the chattel mortgage, took possession of the engine No. 2099, as well as other property, described in the mortgage, on the 26th of April, 1907, and having given ten days' notice of the time and place of the sale and property to be sold, on May 4, 1907, put them up for sale at public auction. That at the sale the attorney for the plaintiff and also one Boe were there, acting as agents of plaintiff. That a sale had taken place before they arrived. That on the engine and other machinery being, at their request, again put up and offered for sale under the chattel mortgage, and in the presence of the attorney and of Boe, who acted and participated in the sale and bid on the property, they making the next highest bid thereon, to-wit, a bid of $500, defendant bid $505 and he being the last and highest bidder, the engine and other property were struck off and sold to defendant; that after that sale and after the purchase by defendant thereunder of the engine and other property, this suit was instituted, the engine, etc., being taken out of possession of defendant under the writ. Wherefore defendant avers that in equity and good conscience and by reason of the conduct of plaintiff, by its attorney and by its agent in requesting the sale of the engine and

other property, they had misled and deceived defendant, by causing defendant to believe that plaintiff was ratifying and endorsing the mortgage sale of the property, and that plaintiff ought not now to be permitted to invalidate the sale and was estopped from claiming any ownership or any right to possession thereof. The answer further avers that the plaintiff's only claim of the right to possession and claim of ownership of the engine is by virtue of a chattel mortgage issued to plaintiff by Charles Dunard which was subsequent to that executed by Charles Dunard to Reeves & Company, securing among other notes the $426 note; that the chattel mortgage executed by Charles Dunard to plaintiff was executed to secure five notes aggregating $850, the purchase price of a separator, wind stacker, weigher, Rich feeder, and other property in that mortgage described; that this latter mortgage bears date June 4, 1906, was duly filed for record January 26, 1907, in Lincoln county, in book 46, page 453, and that it also covers the 16-horsepower Reeves & Co. engine No. 2099, as a second mortgage, and that Charles Dunard at the time had notified plaintiff that Reeves & Company had a prior mortgage on the engine. The answer then goes on to aver that the five notes aggregating $850, secured by the chattel mortgage to plaintiff, represented the purchase price of machinery purchased from plaintiff by Charles Dunard, but not the engine sued for; it then avers a warranty as to the articles purchased from plaintiff; avers the breach of the covenant of warranty as to the capacity of the machinery to do certain work and notice to plaintiff of the failure of the warranty, and it is therefore claimed that the chattel mortgage under which plaintiff claims is null and void for want of consideration. Defendant prays judgment for restitution of the engine, or should plaintiff be unable to make restitution, then for judgment against plaintiff and his bondsman for $850, the value of the engine, together with damages in the sum of $250.

A reply denying all allegations of new matter admits that plaintiff claims the engine and right to possession thereof by virtue of the chattel mortgage to plaintiff, given by Charles Dunard to secure the payment of the five promissory notes, which promissory notes, it is averred, were executed to plaintiff by Charles Dunard, and also by the defendant Joseph Dunard and one Jesse Dunard, for the sum of $850; avers that the notes matured the first of November, 1906, that they were given for the purchase price of the machinery, as stated in the answer; denies that it warranted the machinery as plead; denies that it warranted it at all, except under written warranty set up; denies notice of failure of the warranty, which it avers, it was entitled to; sets up that on the 7th of September, 1906, plaintiff and Charles Dunard entered into a certain agreement by which plaintiff was to furnish Charles Dunard certain lifting forks and jacks and the services of a man to start the separator and set it to work, and avers that it has complied with the conditions of the contract and that by that contract Charles Dunard had waived all warranty of the machinery and that the defendant is estopped thereby to claim any benefit or advantage by reason thereof; denies that Charles Dunard returned the machinery to plaintiff or that plaintiff accepted it or that the contract was rescinded or set aside by Charles Dunard, as it had been averred; denies that the $426 note in the answer described, was secured by the Reeves & Company chattel mortgage in the answer described, and avers that defendant knew that at the time of the pretended purchase and assignment to him of the note and chattel mortgage; denies that defendant purchased the engine at any sale, as in the answer mentioned; avers that all the notes mentioned in the Reeves & Company chattel mortgage and all indebtedness secured thereby had been fully paid off and the mortgage discharged long before defendant procured the assignment of the $426 note, and that the defendant well knew that the

$426 note was paid at the time of the pretended assignment to him and that if any pretended sale or pretense or form of sale occurred under the Reeves & Company mortgage, which it denies, the plaintiff says that the sale was void and conveyed no title to the engine in question to the defendant.

There was a trial before the court and jury, at which trial plaintiff introduced the chattel mortgage from Charles Dunard to plaintiff, dated June 4, 1906, and referred to in the pleadings. Plaintiff also introduced the notes described in the mortgage, which were signed by Charles Dunard, Jesse Dunard and the defendant Joseph M. Dunard.

John Boe, as a witness for plaintiff, testified that he was in the employ of defendant as collector and knows Charles Dunard; had charge of the notes offered in evidence in the spring, tried to collect them and they were not paid. At the time the replevin suit was brought the defendant was in possession of the property, that is, of the engine; that the expense of getting the property was $15 and getting the engine into town $5.50. This was all the evidence of plaintiff. Whereupon defendant requested an instruction for a verdict, which the court declined to give and defendant excepted.

Defendant in his behalf introduced Charles Dunard as a witness, who testified that he had purchased the Illinois separator described in the chattel mortgage from plaintiff, identified the order for the machinery, namely, an Illinois special thresher and stacker with fixtures and weigher and wind stacker for separator. The paper also set out that Charles Dunard was to give notes for the price of these articles, amounting to $850, and it was also set out in this contract of purchase, signed by Charles Dunard, as follows: "I agree to give in security of said notes a first mortgage on the above named machinery and one 16-horsepower Reeves engine No. 2099." The warranty of the defendant was also set out. As it is not material in the view we take of the

case, we take no further notice of it nor of the testimony relating to it.

Defendant then offered in evidence the chattel mortgage, executed by Charles Dunard to Reeves & Company, and the note for $426, dated July 3, 1902, as well as the assignments of these to him. It was objected to the note, that it shows on its face that it is not the note secured by the mortgage, which recites that it was given for a 13-horsepower Reeves & Company engine, and the note is described in the mortgage as being executed by Charles Dunard, while the note offered in evidence is executed by John S. Hechler and Charles Dunard. Plaintiff also objected to the assignment, because not proven and because the note shows on its back that it was all paid before the assignment. The court at first sustained the objection to the note on the ground that it shows on its face that it is not the note of Charles Dunard, but the note of Charles Dunard and John S. Hechler. The objection to the chattel mortgage was overruled, and the objection to the paper attached to the mortgage as an assignment sustained, and the note with the credits endorsed being offered, the objection to the note and the credits endorsed was overruled, and the objection to the purported assignment sustained. All these rulings adverse to him were duly excepted to by the defendant. The chattel mortgage was then read in evidence, the court saying that he would permit it to be read on the theory that defendant would offer further testimony; that standing by itself it would be immaterial. The chattel mortgage bore date 24th of February, 1903, was given by Charles Dunard to Reeves & Company in consideration of $1,655.55, on a 16-horsepower Reeves & Company engine, No. 2099, with all fixtures and appendages belonging to the same, the notes secured by it, among others, being described as one note of date July 3, 1902, for $426, due November 1, 1905, and the other notes not being set out. No reference is made to the fact that Hechler was also on the

note, but defendant appears to have given evidence, or offered to prove, that Hechler was merely a surety. The chattel mortgage provided for sale on default of payment; it was executed by Charles Dunard alone, recorded in the recorder's office of Lincoln county, Missouri, 24th of February, 1903, book 46, page 283, which was nearly four years before the record of the plaintiff's mortgage. On a separate paper attached to the chattel mortgage was an assignment by Reeves & Company to defendant, "without recourse of warranty," dated February 24, 1907. The note was then read in evidence, dated July 3, 1902, payable the 1st of November, 1905: "For value received in a Size 13 H. P. Reeves & Co., Engine, Simple, One Reeves Separator, one Driver Belt, the undersigned promises to pay to the order of Reeves & Company $426, with interest at 8 per cent, payable annually, principal and interest shall draw 8 per cent after maturity. This note is secured by chattel mortgage of even date herewith. Signed, John S. Hechler, Charles Dunard." On the back of the note are endorsements of payments running from January 25th, 1906, to December 21, 1906, amounting to $549, and following these endorsements of payments is this endorsement: "Pay to the order of Jos. N. Dunard, Troy, Mo., without recourse, or warranty," signed, "Reeves & Co., Fred Duel, Treas."

Witness Charles Dunard, then continues his testimony relating to the purchase of the machinery that he made from plaintiff. As before remarked, it is unnecessary to recite that in the view we take of the case.

A witness was then introduced by defendant who testified that Fred Duel was the vice-president of Reeves & Company; that he was acquainted with his signature and that the signature on the chattel mortgage and the note are in the handwriting of Fred Duel, and that he knows that Fred Duel makes all endorsements and that the endorsements on the assignment of the note and chattel mortgage are in his handwriting. Defendant

then offered to show by this witness, who is a traveling salesman for Reeves & Company, that he knows from conversations with them that the note in evidence for $426, which on its face shows it to be for a 13-horse-power, was really made as a part of the purchase price of a 16-horsepower engine. Objection being made, the court sustained the objection and defendant duly excepted. The assignment of the chattel mortgage and of the note, as assigned, were again offered and objected to, for the reason that the note shows, by the endorsements on it, that it was paid off before the date of the assignment and before it was transferred to defendant. After a conversation between court and counsel the court remarked that upon the admission of counsel for plaintiff of the calculation made by him, it showed that there was $12 and something due, after the purported date of the assignment, whereupon the objection was overruled and the assignment read in evidence, the assignment being from Reeves & Company to defendant, both on the chattel mortgage and on the note.

William R. Young, introduced on the part of defendant, testified that the $426 note given by Charles Dunard to Reeves & Company and dated July 3, 1902, signed by Hechler and Charles Dunard and the note offered in evidence was the same note referred to in the chattel mortgage. He testified that he took the acknowledgment of the chattel mortgage as notary, was present when the note was fixed up and the acknowledgment taken and that this note in evidence referring to the engine as a 13-horsepower engine is the same note referred to in the mortgage in which the engine is described as a 16-horsepower engine. He testified that Charles Dunard wanted a 16-horsepower engine, but Reeves & Company couldn't furnish one at the time and told him to use a 13-horsepower and they would supply a 16-horsepower afterwards. Thereupon Charles Dunard had fixed up the papers and the note and the chattel mortgage, which then described a 13-horsepower engine

which was sent him for temporary use until a 16-horse-power engine could be supplied; that Reeves & Company, in the following fall or winter, made the exchange, sending Dunard the 16-horsepower engine in place of the 13-horsepower engine and fixed up a new chattel mortgage to cover the new engine. The property was the same in both mortgages, except the new engine, and Reeves & Company took notes for the difference between the amount named in the old notes and the new price and let the old notes stand. Witness said he recognized the chattel mortgage offered in evidence by defendant as the chattel mortgage referred to and covering the transaction. In answer to a question of the court, this witness said that the present mortgage represented the security that was given after the exchange; that it secures the old notes and the additional new notes; that the debt evidenced by it is the same with the increase in the difference between a thirteen and 16-horsepower engine, and this witness further testified that his bank had this $462 note for collection; that he was cashier of the bank and had the note, before it was endorsed, sent to Reeves & Company, at the request of defendant that it be assigned to him; that was done, the bank received it back from Reeves & Company in its present condition and he, as cashier of the bank, delivered it to the defendant.

E. B. Woolfolk, a witness for defendant, identifying the notice of the sale under the chattel mortgage of Reeves & Company, testified to their posting it at three different places in Lincoln county; had posted them himself on the 22nd or 23rd of April. The sale was on the 4th of May, 1907, taking place at East's farm in Lincoln county. The notice was read in evidence, and refers to the Reeves & Company chattel mortgage, describes the property in it, among others the 16-horsepower Reeves & Company engine No. 2099, with all fixtures and appendages, the separator, wind stacker and all fixtures, saw mill outfit, etc. Witness, contin-

uing, said that when the property was offered for sale defendant and his father and a couple of his brothers and a neighbor were present. Witness bid $100 for the property, bidding for defendant, and that was the only bid, and it was struck off to him at $100. About that time Mr. Dudley, attorney for plaintiff, and Mr. Boe, its agent, came up in a buggy. Witness told them they were late. Some question came up about differences in time and witness said they would sell it over again. The property was exposed for sale again. The only bidders were defendant and Boe. Witness cried the sale. Boe's lowest bid was $500. Defendant bid $505, and there were no other bids; whereupon the saw mill outfit and the Reeves & Company 16-horsepower No. 2099 engine were struck off to defendant. As soon as the sale was over a deputy sheriff, who was present with the writ of replevin in this case, took possession of the property. Witness identified Mr. Boe as present in the court room and as the same agent, who was present at the sale, and who as the representative of the plaintiff, as witness understood, had bid on the property at the sale.

Defendant as a witness in his own behalf, testified, that his father had got into bad health and proposed to him that he should go ahead and take and run the machinery and give his father one-third of what he made and keep two-thirds and he, defendant, go ahead and pay off the note, the $426 note, that was held by Reeves & Company. His father told defendant that to make him safe he should have Reeves & Company assign the chattel mortgage and note over to him. The arrangement was made about the 20th of March, 1905, and in accordance with the arrangement he, defendant, had paid off the note to Reeves & Company. After the note was assigned to him he had received it through the People's Bank, to whom it had been sent by Reeves & Company, and had received the chattel mortgage in the same way. Had advertised the engine for sale under the chat-

tel mortgage; had it sold out on East's farm, Mr. Boe, agent of the Weber Implement Company, being there and present, and he (defendant) purchased it for $505. Had never received anything from his father but the chattel mortgage; did not pay his father any of the $505, but kept it on account of what his father owed him, but had reported the same to his father. On cross-examination, he stated that he was at home on the 20th of March, 1905, went to Nebraska and Dakota and came back the last of August. After his father got sick he ran the machine and was to receive two-thirds of the proceeds and his father one-third. First started into work with the machine and worked for about six months at $1.50 a day and then bought it and ran it as owner. That is to say, had bought the notes and mortgage that Reeves & Company held, then had run the engine as owner. His understanding that when Reeves & Company were paid off that he (defendant) was the owner of the machine; had not paid all of the note off before it was assigned to him; paid the balance due them on the note and then they assigned it to him. The money that he got to pay off the note was money that he had earned himself. When he made the contract with his father for the machinery he understood there was something like $500 or more due on the note. It is not true that the saw mill and threshing outfit were worked under the supervision of his father and the proceeds used to pay off this note; his father had given him and his brothers their time when defendant was eighteen years old, and after he was that age he received $1 a day for working when he worked for his father. He was twenty-one years old in October, 1907. The assignment of the chattel mortgage and note was made to him in January, 1907; had paid the note off to Reeves & Company and the note belongs to him. The engine is his and he has owned it ever since; had operated it up to the time that plaintiff took it from him. Considered the

engine worth $850. After he paid off the mortgage considered that the engine belonged to him.

Charles Dunard, recalled as a witness for defendant stated that in 1904, his health failed and he had made arrangements in the spring of 1905 with defendant, who was his oldest son, that if he would pay the note off, which witness supposed to be $600, that he would have the Reeves people assign the deed of trust over to him. Defendant paid the note to Reeves & Company and he, witness, had never repaid defendant. Shown the note, he stated that it was given for the 16-horsepower engine, the Reeves engine, and that note represents the debt that his son (the defendant) had assumed on account of the agreement that he had just stated. Identifies the mortgage and stated that the engine was worth on the 4th of May about $1,000. Testified that he had told the agent of the plaintiff, when he gave plaintiff the chattel mortgage, that there was about $600 against the engine; that he wouldn't have signed it if it was a first mortgage. The engine he was talking about, he said, was the one here in controversy. That conversation was before he signed the chattel mortgage in favor of plaintiff. Another witness for defendant testified that the engine was worth, on the 4th of May, from $800 to $1,000. Counsel for plaintiff admitted that the engine in controversy, after being replevied by plaintiff, was shipped away from Lincoln county to St. Louis and rebuilt. The affidavit in replevin was offered in evidence, showing the value of the engine, as stated in the affidavit, to be $500 May 4, 1907.

In rebuttal, Mr. Weber, president of plaintiff, introduced as a witness for plaintiff, testified that he remembered Mr. Charles Dunard coming to his office in the spring of 1907, and that he had told witness that the Reeves mortgage had been paid off. Defendant objected to the evidence, because it showed that the conversation took place after the note and mortgage had been assigned to defendant; objection overruled and defendant

excepted. On cross-examination witness stated that the time that Charles Dunard was down to see him, when he told him the Reeves mortgage was paid off, was in March, 1907. Plaintiff recalled Mr. Boe and asked him if he remembered a talk with Mr. Charles Dunard, in 1907, in Troy, in which Charles Dunard informed him that the Reeves & Company mortgage was practically paid off. Objected to by defendant, that if not asked for the purpose of impeachment, is leading, and that no statement of Charles Dunard could bind Joseph Dunard or affect the interest of Joseph, and if asked for the purpose of impeachment, the inquiry was about a matter that was immaterial. The court overruled the objection. The defendant duly excepted. Witness answered in the affirmative. This witness, Boe, stated on cross-examination, that he was present at the sale under the Reeves & Company mortgage on the 4th of May, 1907, when the engine and other machinery were being sold, going there with Mr. Dudley. There was a difference between their watches and although the defendant and the auctioneer said the sale had taken place, they agreed that they would put it up and sell it again, as he and the attorney for plaintiff claimed it had been sold before the hour, whereupon he (Boe) bid up to $500, but before the sale was called off Mr. Dudley authorized the officer to serve the replevin papers which he did. Mr. Woolfolk said: "You are not going to stop the sale." Witness said they were. After the officer had served the papers Mr. Woolfolk said: "Sold to Joseph Dunard," and then said to defendant, "Go in town, Joe, and I will make out a report of the sale." This witness further testified that he had heard at the time Charles Dunard executed the mortgage to plaintiff there was a prior mortgage on the engine. He went to the People's Bank at Troy, saw Mr. Young, cashier, and asked him why Charles Dunard had not paid off his notes to plaintiff. Young told him that Dunard had been paying off the Reeves claim. Witness asked Young

if he didn't think the claim about paid off. Young said he did, and they went into the back room of the bank and figured it up and to the best of his recollection there were about twenty or thirty dollars due Reeves & Company. There was also a letter there from Reeves & Company, authorizing the bank to turn over the papers to Charles Dunard on the payment of the amount due on the note. On cross-examination he testified that he had attended the sale and made bids. The deputy sheriff, who served the papers in this suit, testified that just about the time he delivered the writ, but a little later, the auctioneer, Mr. Woolfolk, had said: "Sold to Joe Dunard." On cross-examination he testified that the last bid made was by Joseph Dunard, the defendant, and that it was $505, and that Mr. Boe and defendant had both made a number of bids and it was finally struck off to defendant at $505. To meet the evidence of plaintiff given in rebuttal, defendant again put on a witness who gave testimony to the effect that the replevin papers were served after the property had been knocked down on the second sale to defendant, and in contradiction to this Mr. Dudley, the attorney for plaintiff, was put on the stand and testified that he had filed the papers in the suit before he went out to the East farm on the day of the sale under the Reeves & Company mortgage; that on claiming that the sale was premature, Mr. Woolfolk, the auctioneer, said they would sell it over again. They went back to the engine and cried the sale again. Mr. Boe and defendant were bidders. Boe bid $500; Woolfolk said, "Understand this sale is cash in hand." Whereupon witness told the officer to serve the writ. He pulled it out and handed it to defendant. Mr. Woolfolk said: "You are not going to stop the sale right here." Witness said, "Yes." Mr. Woolfolk said: "Sold to Joe Dunard." Mr. Boe then took charge and employed defendant to take the engine to town. Defendant objected to doing this as it might get him into trouble, but witness (the attorney

for plaintiff) assured him that he should not be preju-
diced. This was practically all the testimony in the
case.

Defendant asked the court to give eight instructions,
all of which were refused, and at the request of plaintiff
the court gave the following instruction: "The court
instructs the jury that under the evidence and the plead-
ings in this case the verdict will be for the plaintiff, the
plaintiff at the time of the bringing of this suit was en-
titled to the possession of the property in question."
Exception was duly saved to this.

REYNOLDS, P. J. (after stating the facts).—
We have set out the evidence in this case offered
and admitted, as far as we are able to determine that
from the abstract. We are not very well satisfied, from
an examination of the abstract, as to whether the learn-
ed trial judge admitted in evidence the chattel mortgage
of date July 23, 1903, from Charles Dunard to Reeves
& Company, the assignment of that to defendant, the
note for $426, signed by Dunard and John Hechler, and
the assignment of that to defendant. Whatever the fact
is, or whatever the action of the court was as to these,
the note and chattel mortgage and the assignments
should have been admitted in evidence, and evidence
received and considered which was offered tending to
explain the discrepancy in the description of the engine
as contained in the note and as contained in the chattel
mortgage. The main thing about a chattel mortgage is
the debt and if this note evidences the debt secured or
intended to be secured by the chattel mortgage, the vari-
ance in the description of the engine as described in the
note and in the chattel mortgage is immaterial. The
only matter really to be determined in this case, it being
an action commonly called replevin, or as our statute
designates it for the claim and delivery of personal prop-
erty, is the right of the plaintiff to possession, and the
effectual and sufficient answer to that always is a su-

perior right of possession in defendant, which being established determines the action. It was for the jury to determine the identity of the debt, and parol evidence is admissible to establish that. [Lawrence v. Tucker, 23 How. (U. S.) 14, 1. c. 26; Rock v. Collins, 99 Wis. 630, 67 Am. St. Rep. 885; Woods v. Weemar, 104 U. S. 786, 1. c. 793; Shirras v. Caig, 7 Cranch 34.] And it was for the jury to determine whether the debt secured by the chattel mortgage was an honest indebtedness and whether it had been paid. If any part of it was due and unpaid and defendant was the owner in good faith of the note and of the chattel mortgage, the plaintiff can not recover. All the allegations in the answer, we may say, concerning the consideration for the chattel mortgage held by plaintiff and the question of failure of consideration for that as between plaintiff and Charles Dunard, are utterly irrelevant and immaterial to this case. Nor is it necessary to pass on the question of estoppel raised, although we observe in passing, that if the jury found from the evidence that plaintiff was present and participated in the sale through its agents, then the jury had a right to find that plaintiff is estopped to dispute whatever title was acquired by defendant at that sale. Insisting on a second sale, as plaintiff's representatives did, looks very much as if their object in having a second sale was to interpose the levy under the writ between the unsuccessful bid and knocking off the engine to defendant. The point to be determined in this case, and the only one is, who was entitled to the possession of this engine at the time of the institution of this action, and that was a question, as shown by the facts in this case, for the determination of the jury. The fact that the defendant may have been a party to the notes which were secured by the chattel mortgage in favor of plaintiff has nothing whatever to do with the determination of this question, and the fact that he may owe and be indebted on those notes has no significance whatever in determining the right of his possession of

this engine.  It was error for the learned circuit court
to have given the instruction and direction for a verdict
in favor of plaintiff.  In this view which we take of the
case it is unnecessary to go into an examination of the
instructions asked by the defendant, any further than
to say, that as the facts were in evidence in this case, the
fourth, fifth and sixth instructions, with slight verbal
alterations, correctly stated the law as applicable to the
facts, although all three of the instructions might have
been embodied in one.

The judgment of the circuit court of Lincoln coun-
ty is reversed and the cause remanded.  All concur.