WEBER IMPLEMENT COMPANY, Appellant, v. JOSEPH DUNARD, Respondent.

St. Louis Court of Appeals, March 3, 1914.

1. CHATTEL MORTGAGES: Validity of Assignment: Question for Jury.  In an action in replevin by the holder of a chattel mortgage, against the assignee of a senior mortgage, evidence *held* to present a question for the jury as to whether defendant purchased the note secured by the mortgage, or merely paid the balance due thereon with the money of his father, the mortgagor, and in his behalf.

2. ————: Foreclosure: Necessity of Paying the Purchase Price.  The holder of a chattel mortgage, who bid in the mortgaged property at a foreclosure sale advertised to be for cash,

Implement Co. v. Dunard.

for more than the amount due on the mortgage, but who made no payment on his bid, did not acquire title to the property.

3. ————: Priority Between Mortgagees: Replevin: Right of Possession. The holder of a prior subsisting chattel mortgage is entitled to possession of the mortgaged property as against a junior mortgagee, who neither paid his claim nor offered to do so by a tender of the amount due, before bringing an action against him in replevin.

4. REPLEVIN: Chattel Mortgages: Replevin Between Mortgagees: Amount of Recovery. In an action in replevin by the holder of a chattel mortgage against the assignee of a senior mortgage, the defendant, who prevailed, was not entitled to recover against plaintiff, who was unable to return the property, more than enough to compensate his special interest in the property—the amount due on the senior mortgage—and costs of the suit.

Appeal from Pike Circuit Court.—*Hon. B. H. Dyer,* Judge.

REVERSED AND REMANDED.

*Tapley & Fitzgerrell* and *Wm. A. Dudley* for appellant.

(1) The court erred in refusing to direct a verdict for plaintiff. Plaintiff's paper evidence made a prima facie case and defendant failed to show a prior existing lien on or title to the property. Turner v. Langdon, 85 Mo. 438. The note was paid off before assignment to Joe. Dunlap v. Kelly, 115 Mo. App. 610; 22 Cyc., p. 1536, par. A, subd. 1 and 2. (2) The court erred in giving defendant's instruction No. 3. Defendant had only a special interest in the property, if any, and was not entitled to recover the full value of the property as against plaintiff. Dilworth v. McKelvey, 30 Mo. App. 149; Hall v. Brummel, 87 Mo. App. 285; Lewis v. Mason, 94 Mo. 551; Gaston v. Johnson, 107 Mo. App. 592; 34 Cyc. 1568; Press Mfg. Co. v. Roeder, 44 Mo. App. 324; Gentry v. Templeton, 47 Mo. App. 60; Robinson v. Campbell, 8 Mo. 365; Bank

v. Keeney, 134 Mo. App. 74. (3) The court erred in refusing to give plaintiff's second refused instruction directing the jury to assess the value of defendant's interest in the property. See authority in point two. (4) The verdict is excessive to the extent of the amount of the verdict less fifteen and 35-100 dollars, on any theory of the evidence. See authorities in point two. Also, under the pleadings, the allowance of interest as damages was improper. Special damages only were claimed and those were for the use of the engine. There is no claim for general damages. 13 Cyc. p. 183, par. E; Burkholder v. Rudow, 19 Mo. App. 60; Pattison Code Pleading (1 Ed.), Sec. 320. (5) The court erred in assuming as a matter of law that Joe was the absolute owner of the property by purchase at his sale. There was no sale. At most, it was a question for the jury. R. S. 1909, Sec. 2784; Dunkham v. Hartman, 153 Mo. 625; Weber Implement Co. v. Dunard, 140 Mo. App. 476; Jones v. Hock, 47 Mo. 329; Shoe Company v. Nain, 46 Mo. App. 581. (6) After the question of who was entitled to the possession of the property is determined, the equities of the respective parties are to be determined. In any view, the defendant is only entitled to costs. Brown v. Wilson, 26 Mo. App. 462.

*J. D. Hostetter* and *Avery, Young & Woolfolk* for respondent.

NORTONI, J.—This is a suit in replevin. The subject-matter in replevin is one sixteen-horse-power traction engine, No. 2099, of the Reeves & Company manufacture. On a final analysis of the facts, it appears that both plaintiff and defendant claim the right of possession to the engine under separate chattel mortgages thereon executed by Charles Dunard, the father of defendant, Joseph Dunard. However, it is asserted, too, on the part of defendant that he is en-

titled to the possession because of a purchase of the engine at a foreclosure sale under the chattel mortgage held by him. But upon an examination of the evidence it appears this alleged sale was ineffective to convey title and, therefore, defendant's right to possession must be determined with reference to his mortgage alone. The chattel mortgage held by defendant is the senior, or prior, encumbrance on the property, in that it was executed on the 24th day of February, 1903, by Charles Dunard, defendant's father, to Reeves & Company, manufacturers of the engine, and long subsequent thereto assigned to defendant, Joseph Dunard, upon his paying the small balance due on the notes secured. It appears, too, this first mortgage was duly recorded in Lincoln county, where the property was situate, on the same day it was made, February 24, 1903. Plaintiff's mortgage is the second, or junior, encumbrance in that it was executed by Charles Dunard, defendant's father, to plaintiff, Weber Implement Company, on the 4th day of June, 1906, covering the same traction engine, No. 2099, and recorded in Lincoln county, where the property is situate, January 26, 1907—that is, some months before the suit was instituted.

It appears that Charles Dunard purchased the engine in suit from Reeves & Company in 1902, and executed the chattel mortgage thereon to it, securing several promissory notes therein described, among which is the note of $426, dated July 3, 1902, falling due, according to its terms, November 1, 1905. All of the notes described in this first, or prior, mortgage to Reeves & Company were paid, save the $426 note above mentioned. Subsequently, in 1906, Charles Dunard purchased certain threshing machinery—that is, a separator and windstacker—from the plaintiff, Weber Implement Company, and executed a chattel mortgage on that property and also on the traction engine involved here, to the last mentioned company—that is,

plaintiff—to the end of securing a promissory note
for $850 of even date therewith, due November 1, 1907,
which note, it is said, represented the purchase price
of the machinery purchased from the Weber Imple-
ment Company—that is, other than the engine there-
tofore had from Reeves & Company. It appears that
Charles Dunard, the then owner of the engine and
mortgagor in both mortgages, paid all of the notes
secured in the first chattel mortgage to Reeves & Com-
pany, save the note of $426, dated July 3, 1902, and
on this he made a number of payments. These pay-
ments are indorsed on the back of the note in evidence,
the last one being a credit of thirty dollars thereon
December 21, 1906. After crediting this last payment
on the $426 note secured by the first mortgage, there
remained due thereon but a small amount, probably
less than twenty dollars, it is said the precise amount
remaining due on the note at that time was $15.35,
though we have not calculated it.

On January 5, 1907, Charles Dunard, the mort-
gagor, wrote Reeves & Company that he had recently
made a payment of thirty dollars on the note and said
he would pay the small balance due soon. In the
same letter he requested Reeves & Company to assign
the note and mortgage to his son, defendant Joseph
Dunard, and said the balance of the money would be
sent as soon as the papers arrived. In accordance
with this request, Reeves & Company assigned the $426
note and chattel mortgage bearing all of the credits
above referred to, which, it is said, operated to ex-
tinguish the amount of the principal and interest
thereon, except $15.35, to   defendant Joseph Dunard,
and transmitted the papers to the People's Bank of
Troy for delivery to him upon the payment of the
balance due. It appears that Joseph Dunard paid such
balance, whatever it was, for the evidence is not clear
as to this, and the papers—that is, the note and chattel
mortgage—were delivered to him by the bank. De-

fendant, Joseph Dunard, is the son of Charles Dunard, the mortgagor, and at that time was a minor about twenty years of age. After having gotten the Reeves & Company note and mortgage from the bank, and through its assignment, defendant went about foreclosing the mortgage and selling the engine, and caused notices to that effect to be posted.

Plaintiff learned of the proposed sale under the prior mortgage and sent its agent, Mr. Bow, to Troy, Missouri, to protect its interests under the second mortgage. It seems the Weber Implement Company had been informed that the debt represented in the first mortgage to Reeves & Company had been fully paid, in that the money paid to the bank by defendant when the papers were assigned to him was the means of his father, and it is to be inferred that it proceeded on that theory in sending its agent, Mr. Bow, to Troy at the time of the proposed mortgage sale. At any rate, Mr. Bow, representing plaintiff, instituted this replevin suit on that day with a view of obtaining possession of the engine then advertised for sale under the Reeves & Company mortgage, which, it is said, was owned by defendant. The mortgage sale under the first, or Reeves & Company, mortgage, then held by defendant, was advertised to take place at two o'clock in the afternoon, and Mr. Bow, in company with his counsel and the deputy sheriff, who, it appears, had the replevin writ in his pocket, went out to the place of sale. The engine was put up for sale and defendant's counsel acted as auctioneer. Several bids were made. Mr. Bow, plaintiff's agent, bid for it and defendant bid on his own behalf. While the bidding was on, defendant's counsel stated the terms of the sale were cash in hand and thereupon Mr. Bow quit bidding and it is said the sheriff served the replevin writ on defendant before the property was "knocked down." On the other hand, it is said by other witnesses that the writ of replevin was not served until after that

fact. But we regard this as immaterial. The last bid made by Mr. Bow was $500, whereupon defendant bid $505, and the engine was "knocked down" to him by the auctioneer. But though such be true, it does not appear that Joseph Dunard ever paid anything whatever on this purchase, and the replevin writ was served immediately. Plaintiff insists that it was intended on its part, in event the engine was bought by Mr. Bow for it, to pay the purchase price, or a portion thereof, at least, with the note it held and described in its mortgage on the property against Charles Dunard, the owner, but upon the announcement of the auctioneer, defendant's counsel, that the terms of the sale were cash in hand, it stopped bidding and caused the writ of replevin to be instantly served. However this may be, it appears conclusively that the terms of the sale announced at the time were cash in hand and, of course, this applies as well to defendant who, it is said, purchased thereat, as to others. Defendant asserts this sale in his answer and relies upon it and the purchase thereat, but introduced no evidence whatever tending to prove it was consummated by making any payment thereon. The sale seems not to be relied upon in defendant's instructions, and the issue submitted to the jury relates rather to the respective rights of the parties under the two chattel mortgages. It is contended throughout, on the part of plaintiff, that Joseph Dunard acquired no right whatever in the first or Reeves & Company's mortgage when he procured possession of it through making the final payment to the People's Bank of Troy for Reeves & Company, and this, too, notwithstanding the assignment by Reeves & Company to him. This issue was contested in the case and submitted to the jury by the instructions given on both sides. Under the instructions so given, the jury found the fact to be that defendant purchased the note with his own means and is in

good faith the owner of it and the first mortgage as an incident thereto.

It is argued on the part of plaintiff that the court should have peremptorily directed a verdict for it on the evidence, for it is said to be obvious that defendant merely paid the small balance due on the Reeves & Company note with his father's funds and in no sense may be regarded as the owner thereof through a purchase. In this connection it is pointed out that defendant was a minor, twenty years old at the time, and that he had heretofore made payments on the note for his father with his father's means. Then, too, the letter of defendant's father to Reeves & Company, dated a few days before that transaction occurred, to the effect that the small balance on the note would soon be paid and requesting it be assigned to Joseph Dunard is pointed to in support of this argument. However, this letter and the fact of defendant's minority at the time are not so conclusive on the subject as to remove the question concerning the purchase entirely from the province of the jury. Neither defendant nor his father, Charles Dunard, testified in the case on the trial now under review, though it appears they did so on a former trial which was heretofore reviewed by this court, and we are unaided by their version of it. However, enough appears to show that Joseph Dunard was a young man actively engaged in working around, and, no doubt, had small means of his own thus acquired. The cashier of the bank says positively that defendant Joseph Dunard called in person and paid the balance due on the note and it was delivered to him under the assignment made by Reeves & Company. This we believe to be sufficient to render the question as to whether he purchased the note or merely paid the balance with his father's money and in his behalf as one for the jury. On a former trial of the case, the court peremptorily instructed a verdict for plaintiff—no doubt on the theory that it did not suf-

ficiently appear Joseph Dunard had purchased the note and the presumption was that he had paid it for his father instead, but this court reversed that judgment and declared the question as to whether he had purchased the note on his own account or paid it for his father was one for the jury to determine. [See Weber Imp. Co. v. Dunard, 140 Mo. App. 476, 120 S. W. 608.] It is true the evidence was more favorable to defendant on this question on the former trial than on the one now under review, but nevertheless we believe there is sufficient here, in view of the facts that Joseph Dunard personally paid the note and took it together with the mortgage under the assignment, to render the question one for the jury, and this, too, notwithstanding the fact that he was a minor, twenty years of age, and that his father wrote Reeves & Company the letter requesting the assignment as above stated.

It is entirely clear that defendant must rely upon his mortgage and may not successfully assert that he owns the engine by virtue of a purchase at the mortgage sale above adverted to. It is obvious this sale was never consummated so as to effect the vesting of title in him. It is true defendant had advertised it under the Reeves & Company mortgage, which he held, and it is true, too, that there was competitive bidding thereon between him and Bow, who represented plaintiff, but upon the announcement by defendant's counsel, who performed the office of auctioneer, that the terms of the sale were cash in hand, Bow withdrew and the engine was "knocked down" to defendant at $505. No payment was made on this alleged purchase, and, of course, no title passed to defendant thereunder, for the case is not one where he purchased from a trustee, but rather one where he thus purchased under his own mortgage at a sale conducted by his attorney. What really occurred at the time of this alleged sale is about as follows: Upon defendant's counsel announcing the terms of the sale to be cash in hand, plaintiff's agent,

Bow, withdrew and the property was "knocked down" to defendant at $505. Either before the fall of the hammer or immediately thereafter, the sheriff served the replevin writ on defendant and took possession of the engine thereunder. Thereupon plaintiff's agent employed defendant to deliver the engine to him in Troy, which he did, and was paid for so doing. Though defendant pleads the sale and the purchase thereunder in his answer, this feature of the case is not much relied upon and was not submitted to the jury at all by defendant's instructions. Of course, if defendant purchased the engine at this sale, it devolved upon him to pay the purchase price, after deducting the small balance due on the note which he held, and this balance, at that time, including interest, was, it is said, less than twenty dollars. Nothing of this kind occurred, and the alleged sale, as before stated, is therefore ineffective to vest title in defendant.

From what has been said, it appears the parties, plaintiff and defendant, are contending in this case with respect to the right of possession to the engine under the two mortgages. This, of course, is to be determined with reference to the time of the institution of the suit. It appearing to the satisfaction of the jury, as it did, that defendant is the holder of a prior subsisting mortgage on the engine, securing a small balance due on the $426 note, which he purchased, it is entirely clear that his right of possession is superior to that of plaintiff. Plaintiff insists that defendant possessed no right under the first or prior mortgage, because it is said he merely paid the balance due on the note for his father and with his father's money. Thus insisting, plaintiff neither paid his claim nor offered to do so as by a tender of the amount due at any time before the institution of the suit or the levy of the writ, or at any other time, for that matter. And this being true, in accordance with the finding of the jury, defendant possessed the superior or better right

to possession, for his claim was a valid one and first of that asserted by plaintiff. [See Campbell Printing, etc. Co. v. Roeder, 44 Mo. App. 324.] This is substantially all that was decided on the prior appeal when the case appeared here with a verdict peremptorily instructed for plaintiff. In considering that matter alone, the court said that if the jury found defendant's mortgage was a valid and subsisting claim, prior in point of time, as it was, plaintiff should not be permitted to prevail over it and the finding with respect of that matter should be for defendant. [See Weber Imp. Co. v. Dunard, 140 Mo. App. 476, 120 S. W. 608.] Of course, such finding entitles defendant to recover his costs, and this is true though the rights or special interests of the parties may be otherwise disposed of in the verdict, as is always essential between contending parties in replevin, where it appears special interests are involved. [See Dodd, Brown & Co. v. Wilson, 26 Mo. App. 462.]

Proceeding on the theory that if defendant had the superior right to possession of the property at the time of the institution of the suit, he was, of course, entitled to prevail, the court instructed the jury for defendant, that if they found the issue for him, and further found that, though plaintiff took possession of the engine, it no longer had it and was unable to return it to defendant, they should allow defendant the reasonable value of the engine, as shown by the evidence, at the time of the institution of the suit, not exceeding the sum of $850, to which might be added damages in the nature of interest. Moreover, the court refused to instruct at the instance of plaintiff that if they should find for defendant they should also find his interest in the engine in suit—that is, the amount remaining due and unpaid on the $426 note, which he had purchased—and to such sum they should add interest. Obviously the court erred with respect to the giving and refusing of these instructions, for at most

defendant was not entitled to recover more than enough to compensate his special interest in the property and the costs of suit. The suit has been pending in court for a number of years, and it appears that, though plaintiff took possession of the engine under the writ at the time it was instituted, it was unable to return the engine to defendant even if the finding should be for him. In such circumstances, it is clear that defendant should not be permitted to recover more than enough to satisfy his interest under the note and mortgage together with costs. By its verdict the jury found defendant was entitled to the possession of the property at the institution of the suit and that its value was $505 at that time and further assessed damages for the taking and detention of the engine at the sum of $163.25, making the total of the value of the engine and such damages amount to the sum of $668.25. Judgment was entered on this verdict in favor of defendant and against plaintiff for $668.25 and costs. It would seem to require no labored argument to point out that this may not be permitted to stand in a case where probably defendant's entire claim, including interest, amounted to no more at the time of the verdict than $50. If plaintiff were a stranger to the title to the property entirely—that is, had no interest whatever in it—it appearing as it does that defendant's interest was a special one, it may be that the judgment for defendant for the full value of the property would be proper, on the theory that defendant would be answerable over to the general owner for the balance due to him. But such is not the rule of decision in the instant case, for here, though plaintiff was but the holder of a second mortgage, it stood, after condition broken, in the position of general owner of the property, in so far as defendant's rights are concerned under the prior, or senior, mortgage. [See Lewis v. Mason, 94 Mo. 551, 5 S. W. 911, 8 S. W. 735.] Therefore, it appearing that defendant possessed but a special and lim-

City v. Lang.

ited right or interest to the extent of his mortgage indebtedness against the property, it was erroneous to award him the full value of the property, for the damages should be limited to such special interest which resided in him, and, of course, this included the principal of the debt and accrued interest thereon—that is, the amount of the note remaining unpaid when defendant purchased it, together with interest up to the date of the verdict. The authorities are all one way on the subject, and it is unnecessary to discuss them. The leading case in this State is that of Dilworth v. McKelvey, 30 Mo. 149, but see, as well, to the same effect: Campbell Printing, etc. Co. v. Roeder, 44 Mo. App. 324; Lewis v. Mason, 94 Mo. 551, 5 S. W. 911, 8 S. W. 735; Gentry v. Templeton, 47 Mo. App. 55; Hall v. Bramell, 87 Mo. App. 285; Dodd, Brown & Co. v. Wilson, 26 Mo. App. 462; Gaston v. Johnson, 107 Mo. App. 590, 80 S. W. 276. See, also, 34 Cyc. 1568.

Because of this error in authorizing a recovery for defendant for $668.25, when at most he is entitled to but a few dollars and his costs, the judgment should be reversed and the cause remanded. It is so ordered. *Reynolds, P. J.,* and *Allen, J.,* concur.