SIDNEY SMITH, Inc., a Corporation
(Plaintiff), Respondent,

v.

Simon S. STEINBERG (Defendant),
Appellant.

No. 7272.

Springfield Court of Appeals.

Missouri.

June 8, 1955.

Ford & Ford, Jones & Jones, Kennett, for appellant.

Ward & Reeves, Caruthersville, Robinson & Robinson, Memphis, Tenn., for respondent.

McDOWELL, Presiding Judge.

This appeal is from a judgment in favor of plaintiff in a replevin action involving 74 cases of cigarettes. The petition and affidavit in replevin is in usual form. It alleges that plaintiff is the owner and entitled to possession of 74 cases of cigarettes; that the same is unlawfully detained by the defendant and that the action accrued within a year before the filing of the petition.

The amended answer contains a general denial of the allegations of the petition and a cross claim which alleges defendant has a lien and vested interest in the property involved to the extent of the unpaid balance due defendant from Henry Loeb II and Maurice D. Plough, co-partners and owners of the Steele Sales Company of Steele, Missouri, under a written contract of employment whereby defendant was employed to operate and manage said Steele Sales Company and as part compensation was to receive one-third of the profits of the business; that there is due and unpaid to the defendants from said profits, the sum in excess of $5,000 for the year 1947 to 1948, ending November 1st, and from November 1, 1948, to August 17, 1949, when said business was terminated.

It alleges that defendant has a lien against the property for said amount and a special interest therein and defendant asked that his rights in said property be adjusted in the replevin action and the defendant be paid the amount due him.

The counterclaim further alleges that Sidney Smith, president of plaintiff-corporation, purchased the property involved in the replevin action from the co-partnership of Loeb and Plough and that at the time of the purchase had notice that said property was being held by the defendant for the unpaid balance of the profits due him for operating the Steele Sales Company and that defendant was a creditor of the said Loeb and Plough and would not relinquish possession of said property until he had been paid; that Loeb and Plough are non-residents of Missouri and own no property in this state; that plaintiff could not collect the amount due him for operating the Steele Sales Company without going to Tennessee, home of Loeb and Plough, and asked the court for an accounting to determine the amount due him from Loeb and

698

Plough that the goods replevied be impressed with a lien in favor of defendant to the extent of the amount found to be due him.

The reply is a general denial of new matter alleged.

The evidence shows that Henry Loeb II and Maurice D. Plough, co-partners, owned and operated the Memphis Tobacco Company of Memphis, Tenn.; that they established the tobacco business at Steele, Missouri, under the firm name of Steele Sales Company; that on November 1, 1945, defendant Simon S. Steinberg, was employed by said partnership to operate said business by written contract, which is in evidence as defendant's exhibit (a). The terms of this contract, in part, are as follows:

"The parties of the first part are the exclusive owners and operators of Steele Sales Company, engaged in the sale of tobacco products, viz.: cigarettes, cigars, and all such other and similar goods and wares customarily sold by tobacco concerns with its place of business located in the City of Steele in the State of Missouri.

"The party of the second part agrees to enter into the employer's service as manager of Steele Sales Company, aforesaid, and to commence hereunder his employment on the 1st day of November, 1945, and the employment shall continue for the period of one (1) year, unless sooner termination as provided for herein, and for such additional periods likewise provided for herein.

"The party of the second part shall devote the whole of his time and attention to the business, and diligently, soberly, and faithfully employ himself therein, and carry on the same to the greatest advantage; vested with the authority to hire or dismiss any person working for said business, and shall be paid for his service, as manager, the weekly sum of Fifty Dollars ($50.00), in addition to his share of the profits as herein provided.

"The party of the second part shall be entitled to receive, in the nature of a bonus in addition to his Fifty Dollars ($50.00) weekly salary, one-third (1/3) of the net profits earned by the business during the term of this contract of employment. In calculating the net profits under the terms of this contract, the party of the second part's weekly salary is to be included in operating cost, and not deducted from his share of the net profits; however, in determining net profits, all taxes, depreciation and losses, except income tax, are to be figured in determining the net profit of said business. The bonus and/or participation in the net profits shall be payable to the party of the second part within fifteen (15) days after inventory and audit have been made of the business.

"Party of the second part agrees not to, either during the term of his employment or at any time thereafter, to disclose to any person, firm or corporation any information concerning the business or affairs of the employers, which he may have acquired in the course of or incident to his employment hereunder, for his own benefit or to the detriment or intended or probable detriment of his employers; and further agrees not to engage, on the termination for any cause whatsoever of his employment hereunder, in the same or similar line of business as that carried on by the employers, or engage to work for any individual firm or corporation engaged in such line or similar line of business for a period of ten (10) years from the time the employment under this contract ceases.

"The covenant binding the party of the second part to devote the whole of his time and attention to the business, requires the employee to devote his entire time, skill, labor and attention to said employment during the term of this contract. The words 'entire time', as used herein, are intended to mean such services to be rendered by the employee to diligently and faithfully carry on the Company's business to the satisfaction of the employers, and the employers shall be the sole judge of such satisfaction.

*    *    *    *    *    *

"The party of the second part agrees, during the term of this contract, and for such additional periods herein provided, to keep proper books of account, and entries made therein of all such matters, transactions and

things as are usually entered in books of account kept by concerns engaged in the same or similar business. Such books of account and all letters, papers, etc., shall be kept at the office of the business, and the parties of the first part shall at all times have free access to examine, copy and take extracts from the same.

"The party of the second part agrees to execute a daily report of all sales, and all receipts (money, etc.) are to be deposited daily in a depository selected by the parties of the first part, and a copy of the daily report, together with a duplicate deposit slip endorsed by the bank, shall be forwarded daily to the office of the parties of the first part located in Memphis, Tennessee.

"The party of the second part agrees to neither buy or purchase any merchandise for said business, nor contract or obligate said business, or the parties of the first part, in any manner whatsoever. There is excluded from this limitation, the right and privilege in the party of the second part to make limited purchases in the conduct of the office by the use of a special and designated 'Petty Cash'. This fund amounts to Two Hundred Dollars ($200.00), and such purchases as party of the second part deems advisable in the diligent conduct of said business shall be made from said petty cash fund. The vouchers shall be retained, and when said petty cash fund is exhausted, party of the second part agrees to forward said vouchers to the office of parties of the first part, and said fund shall be replenished.

"It is understood between the parties hereto that the parties of the first part shall keep said business adequately supplied with merchandise and will conduct all newspaper, and all such other advertisements from their office in Memphis, Tennessee.

"It is further understood that parties of the first part shall pay all debts and obligations of said business, except office expense to be paid from petty cash fund, from their office located in Memphis, Tennessee. All funds so deposited as hereinabove directed shall be withdrawn from said depository only by parties of the first part.

"The party of the second part is responsible for all shortages and losses occasioned through the negligent operation of said business, except such losses that may arise from an unlawful origin. In the event party of the second part breaches this contract, then and in that event, party of the second part forfeits any and all right to his participation in the net profits as herein provided.

"It is expressly understood that party of the second part has no interest vested or contingent in the merchandise, equipment, tradesname or good will of said business, either during the term of this contract or after its termination.

> \*    \*    \*    \*    \*    \*

"The party of the second part agrees to execute, simultaneously with this contract, an indemnity agreement, which is made a part hereof by reference, \* \* \*"

It was provided by this contract that it constitutes the whole agreement of the parties.

The evidence shows that Loeb and Plough and defendant were all prosecuted in the Federal Court of Louisiana on a criminal charge of shipping cigarettes into that state and, as a result of such prosecution, the parties signed a written contract or statement, in evidence as defendant's exhibit (1).

Under this contract it was stated that the agreement was made with respect to the interest of the parties in the operation of the Steele Sales Company. We will not set out the whole agreement but it stated that the Steele Sales Company was engaged in the sale of tobacco products, principally cigarettes, which in the main were transferred through the mails; that the business was owned by the Memphis Tobacco Company, a partnership composed of Henry Loeb II, Maurice Plough and Mrs. Maurice Plough; that Simon S. Steinberg is employed by the Steele Sales Company at a salary of $50 per week and, in addition, receives a bonus of one-third of the net profits of the Steele Sales Company.

This contract recites the original contract was made between defendant and Martha

Huffman and Henry Loeb II, at that time owners of the Memphis Tobacco Company; that the interest of Martha Huffman was later acquired by Mr. and Mrs. Maurice Plough. It states:

"Said contract has been renewed from time to time and said Steinberg, at the time of the transactions involved in the indictment returned against him and said Loeb and Plough in the United States District Court at New Orleans, was managing the Steele Sales Company under the same terms and for the same compensation as provided in said original contract.

"In the operation of the business of said Steele Sales Company, all sales were made by said Steinberg as manager thereof and when orders were received for cigarettes from customers or purchasers in other states, the orders were filled and the mailing of the cigarettes, in filling such orders, was by said Steinberg personally or under his direction.

"It was understood by all the parties to said contract that orders for cigarettes from other states would be accepted by the Steele Sales Company and handled as stated in the preceding paragraph and the mailing of cigarettes by said Steinberg when ordered by customers or persons in other states was within the scope of his employment."

This agreement then provided that the monies received for cigarettes were to be deposited in a bank selected by Loeb and Plough and that defendant could not issue checks against such deposit. However, it provided that the petty cash, from which defendant might use in the business, was raised from $200 to $500.

It stated: "The contract of employment provided that all books of account, papers, letters, etc., should be kept at the office of the business of the Steele Sales Company. In receiving orders from Angussa, or Regussa, in the State of Louisiana and making shipments pursuant to such orders, neither Loeb nor Plough were consulted with reference to the orders and, so far as Steinberg knows, knew nothing about them and, in any correspondence that was had with Angussa, or Regussa, neither Plough nor Loeb was consulted * * *."

This further statement was made in the latter contract:

"The scope of the original contract was not enlarged by any subsequent agreement or understanding between the parties * * *."

The evidence is that at the time of this replevin action the business of the Steele Sales Company was being liquidated; that a day or two prior to August 17, 1949, Sidney Smith, President of plaintiff-corporation, came to the Steele Sales Company and presented a letter of introduction from the Memphis Tobacco Company to defendant, advising defendant that Smith was interested in purchasing the assets of the Steele Sales Company. Both defendant and his wife testified that Smith, at the time, said he was only interested in the mailing list and that he looked the list over. They testified that defendant informed Smith that Loeb and Plough were indebted to him in a sum in excess of $5,000 for his one-third of the profits of the business under a written contract between the parties and that defendant was holding the assets of the business until paid and that he would not surrender possession of the same until he was paid; that the next time he saw Smith was when he and the deputy sheriff and C. W. Cunningham, bookkeeper of the Memphis Tobacco Company, came to the Steele Sales Company and replevied the goods involved on the 19th day of August, 1949.

Plaintiff's case was made by record testimony and the oral testimony of C. W. Cunningham.

Cunningham testified that a day or two before the execution of the bill of sale, in evidence, he came to the Steele Sales Company and demanded the cigarettes from defendant and at the same time he counted the cigarettes so that he could make an inventory thereof, and the next day came back and went to plaintiff's lawyers' office in Caruthersville and gave them the inventory of the cigarettes and the amount due the Memphis Tobacco Company for the same, to wit, $5,183.68. However, he did make a statement that the inventory of the goods was not made until after the replevin action.

This witness identified a bill of sale between Henry Loeb II and Maurice D. Plough, DBA Steele Sales Company to Sidney Smith, DBA Joe Smith Sales Company, Joplin, Missouri, executed August 17, 1949, conveying all assets of the Steele Sales Company. It contained this clause:

"Whereas, the sellers and the purchaser have agreed that the stock of merchandise of the Steele Sales Company, inventoried at factory cost which is list less 10% and 2% and the amount thereof is to be paid to the sellers by the purchaser in cash at the consumation of sale".

Cunningham testified that he was present when the sale was negotiated between Loeb and Plough and Sidney Smith; that he witnessed their signatures to the bill of sale; that at the time the instrument was signed the sellers were paid $2,500 by check for the fixtures and mailing list and that witness deposited the money in the bank to the credit of the seller; that after he had made an inventory of the cigarettes, before the filing of the suit herein, he charged on the books the selling price of the cigarettes which was handled in open account. He testified that the buyer was billed for the purchase price of the cigarettes and a check was received from buyer for $5,183.68 on August 25, 1949, and deposited to the credit of sellers. He identified the deposit slip which was offered in evidence, and stated he satisfied the account on the books. He testified that he went with the deputy sheriff and Smith to the Steele Sales Company when the writ of replevin was served; that after the goods were taken into possession by the sheriff, he packed the cigarettes on that day and shipped them over the Frisco Railroad to Joe Smith Sales Company at Joplin, Missouri.

Defendant and his wife testified that Sidney Smith came with the sheriff to replevin the goods and stated to defendant and his wife that he did not want to purchase the cigarettes but that the sellers forced him to do so. Defendant admitted that Smith told them at the time that he had purchased the cigarettes.

Neither Smith, Plough nor Loeb testified at the trial or were present. It was admitted by Robinson and Robinson, attorneys for Loeb and Plough, that they paid for the replevin bond and they assisted Ward & Reeves in the trial of the case. Loeb and Plough were in town but did not attend the trial. There was no testimony as to who paid Mr. Reeves, the trial attorney.

Defendant's testimony was undisputed that there had not been a complete settlement between himself and Loeb and Plough for net profits due defendant for the year November 1, 1947, to November 1, 1948, but defendant had been paid $4,445 as part settlement; that there had been nothing paid defendant for profits from November 1, 1948, to August 17, 1949, when the business was discontinued; that there is now due defendant for profits earned more than $5,000 and which amount is in excess of the value of the cigarettes replevied.

The judgment of the court was for the plaintiff on the petition and for plaintiff and against defendant on defendant's cross claim.

We will refer to appellant as defendant and to respondent as plaintiff, the position they occupied in the replevin suit below.

■ In allegation of error numbered I defendant makes two contentions: First, the court erred in finding judgment for plaintiff and that plaintiff was the owner and entitled to possession of the property involved.

We are cited to Section 507.010 RSMo 1949, V.A.M.S., as authority under this contention. This section merely provides that every action shall be prosecuted in the name of the real party in interest. We find there is no merit to this contention. The bill of sale offered in evidence shows that all of the assets of the Steele Sales Company were conveyed to plaintiff by the owners, August 17, 1949. The testimony conclusively shows that the assets had been fully paid for. The testimony of the sellers' bookkeeper is that the sales price of the cigarettes was determined prior to the filing of the suit; that plaintiff was charged on the books with the purchase price thereof and when billed for the amount of the purchase price, paid

the same by check which was deposited in the bank to the credit of sellers on August 25th. The deposit slip, showing such payment, was offered in evidence.

The second contention is that Sidney Smith, Inc., purchaser of the cigarettes, was not an innocent purchaser but took with full notice of defendant's claim. No authorities are cited under this allegation. The evidence is undisputed that when the purchase was made, the buyer had full notice that the cigarettes were in possession of the Steele Sales Company in charge of defendant.

Under the evidence the buyer obtained no greater rights to the cigarettes than the seller had.

Error numbered II contains four contentions. It is first contended that under the evidence defendant was entitled to an equitable lien on the assets of the Steele Company, which included the cigarettes in question, for the unpaid profits due defendant as agent of the Steele Sales Company.

This allegation presents the sole issue in the case.

It is the contention of the defendant that he is entitled to an equitable lien against the property replevied for the unpaid balance of the profits due him for operating the Steele Sales Company as its agent.

Plaintiff's contention is that defendant's contract of employment with sellers created the relationship of employer and employee or master and servant and that the servant has no lien upon the property of his master as security for his wages.

We have set out the written contract between defendant and his employers, Loeb and Plough, from which the relationship of the parties must be determined.

In 2 Am.Jur. p. 16, Sec. 7, the law is stated:

" * * * The vital point of distinction is that the agent is not only employed by the principal, but represents him as well. He is the business representative of the principal and acts not only for the principal, but in the place and instead of the principal. The servant, on the other hand, simply acts for the principal, and usually according to his direction without discretion. In a strict sense, agency contemplates contractual liability arising from the acts of the agent. * * *"

In 18 R.C.L. p. 490, Sec. 1, in discussing the relationship of employer and employee, this law is stated:

"The essential elements are that the master shall have control and direction not only of the employment to which the contract relates, but of all of its details, and shall have the right to employ at will and for proper cause discharge those who serve him. If these elements are wanting, the relation does not exist. * * *"

An examination of the written contract of employment, in evidence as defendant's exhibit (a), shows that defendant was to manage the business of the Steele Sales Company and carry on the same to the greatest advantage of the parties; that he was vested with authority to hire and dismiss persons working for the business. He was not only to receive $50 per week for his services, but, in addition, was to have one-third of the net profits of the business during such employment. The weekly salary was to be included in operating cost and not deducted from the profits. It provided that in the event of total incapacity or death of either party of the first part or party of the second part or upon the ceasing to carry on the business, the agreement would be terminated or, in case the manager became disabled for four consecutive weeks, his employment would be terminated. Defendant's duties were to keep proper books of account, and entries made therein of such matters usually entered in books of account kept by similar businesses. These books were to be kept in the place of business of the Steele Sales Company and the employers were to have access to examine, copy or take extracts from the same. The employee was to make daily reports of all sales and all receipts of money were to be deposited daily in a depository selected by employers and a copy of the deposit was to

be forwarded to employers at Memphis, Tennessee.

Defendant was to neither buy merchandise nor obligate said business by contract. However, there was excluded from this limitation the right and privilege of the employee to make limited purchases in conduct of the office by use of a petty cash fund in the sum of $200, which later was extended to $500. It was the duty of employers to keep the business adequately supplied with merchandise and to make all advertisements from its office in Memphis. Only employers were permitted to withdraw from the depository made from sales from the business.

Employee was made responsible for losses occasioned from negligent operation except losses that arise from unlawful origin and it was expressly provided that second party have no interest, vested or contingent, in the merchandise, equipment, tradename or good will of the business during the term of the contract or after its termination.

Later, the parties signed a written agreement or declaration of the intention of the parties as to their duties which is in evidence as defendant's exhibit 1. This agreement stated that the contract of employment originally made had been renewed from time to time. It stated that the business of the Steele Sales Company and all sales made were done by the defendant as manager thereof; that all orders, received for cigarettes from customers or purchasers in other states, were filled and the mailing done by the defendant, personally, and under his direction, and that such business was within the scope of his employment. It stated that cigarettes ordered from the state of Louisiana were accepted and filled by the defendant and all correspondence connected therewith was carried on by him without the knowledge or advice from his employers. It provided that the scope of employment was not enlarged by any subsequent agreement.

From the written contracts and declarations of the parties we find that the defendant was not only employed by the principals but represented them as well. He acted not only for them but in their places. It was admitted that he secured mailing lists; that he acted for the principals in the accepting of orders for goods through the mail and filled such orders without any direction from the principals or without consulting them. It is admitted that the principal business of the Steele Sales Company was the selling of cigarettes by orders through the mail and that this business was conducted solely by defendant without direction or consultation of his employers. He was more than just an employee. He was an agent of his principals.

We do not agree with plaintiff's contention in point III of its brief that defendant could not have an equitable lien because his contract of employment with sellers created only the relationship of employer and employee or master and servant.

This brings us to the all-inclusive question involved: Does the defendant have an equitable lien upon the property involved which was replevied from his possession for compensation during the course of the agency with reference to that property?

In Jones on Liens, Vol. I, Chap. II, Sec. 27, this law is stated:

"An equitable lien arises either from a written contract which shows an intention to charge some particular property with a debt or obligation, or is declared by a court of equity out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings. * * *"

Pomeroy's Equity Jurisprudence, Vol. 3, 4th Ed., p. 2958, Sec. 1233, states the law:

"An equitable lien is not an estate or property in the thing itself nor a right to recover the thing,—that is, a right which may be the basis of a possessory action; it is neither a *jus ad rem* nor a *jus in re*. It is simply a right of a special nature *over* the thing, which constitutes a charge or encumbrance upon the thing, so that the very thing itself may be proceeded against in an equitable action, and either sold or sequestered under a judicial decree, and its proceeds in the one case, or its rents and

profits in the other, applied upon the demand of the creditor in whose favor the lien exists. It is the very essence of this condition that while the lien continues the possession of the thing remains with the debtor or the person who holds the proprietary interest subject to the encumbrance. The equitable lien differs essentially from the common-law lien, which is simply a right to retain possession of the chattel until some debt or demand due to the person thus retaining is satisfied; and possession is such an inseparable element, that if it be voluntarily surrendered by the creditor, the lien is at once extinguished."

Pomeroy's Equity Jurisprudence, Vol. 3, 4th Ed., p. 2961, Sec. 1234 states the law:

" * * * The theory of equitable liens has its ultimate foundation, therefore, in contracts, express or implied, which either deal with or in some manner relate to specific property, such as a tract of land, particular chattels or securities, a certain fund, and the like. It is necessary to divest one's self of the purely legal notion concerning the effect of such contracts, and to recognize the fact that equity regards them as creating a charge upon or hypothecation of the specific thing, by means of which the personal obligation arising from the agreement may be more effectively enforced than by a mere pecuniary recovery at law."

We think the authorities all hold that equitable liens arise wholly from considerations of right and justice and from the application to particular conditions of fact of those maxims which lie at the foundation of equity jurisprudence. Pomeroy's Equity Jurisprudence, Vol. III, p. 2976, Sec. 1238; 54 A.L.R. p. 289—Annotation; 17 R.C.L. p. 605, Sec. 14; 65 A.L.R. p. 1080—Annotation.

In 33 Am.Jur. p. 441, Sec. 45, the law is stated:

"It is settled beyond question that a court of equity is the appropriate tribunal for the enforcement of an equitable, as distinguished from a statutory or common-law, lien. Moreover, since equity has brought into existence liens unknown to the common law, it can enforce them by whatever means they will be rendered more efficacious in doing justice to the parties interested."

In 3 C.J.S., Agency, § 200, p. 109, the law is stated:

"An agent who is entitled to be reimbursed from the principal for expenses incurred, advances made, or losses sustained during the course of the agency, or *who is entitled to compensation for his services,* has a lien upon the principal's goods or property which comes lawfully in his possession during the course of the agency from which the right to indemnity or compensation arises. This lien is specific or particular in character, and is not a general lien so as to give the agent a right to retain the principal's goods for claims disconnected with the business of the agency." (Emphasis ours.) 2 C.J. pp. 800, 801, 802, Secs. 469, 470, 471; Calloway Bank v. Ellis, 215 Mo.App. 72, 238 S.W. 844.

Sanders v. Brooks, 239 Mo.App. 578, 194 S.W.2d 540, was a replevin action for hogs. The issue mostly concerned was whether the defendants had an agister's lien for feed. The court made this statement of law on page 542 of 194 S.W.2d:

"The rule is that 'Replevin suits are generally flexible enough to permit an adjustment of the real rights of the parties, and where the prevailing party has only a limited or special interest in the property instead of the ownership, *and the other party has obtained possession under the writ,* the value of such special interest only should be assessed.' " (Citing authorities.)

The law in Missouri has been decided that in actions in replevin it is the duty of the trial court to adjust the issues between the parties as shown by the pleadings concerning the property involved. Our courts have uniformly held where possession of property is taken under a writ of replevin and the defendant claims the right of possession because of a lien then upon the trial of the cause the amount of the lien must be determined. Sanders v. Brooks, supra.

The property rights or interest in the chattel involved in a replevin action is but ancillary to the dominant right of possession. And it has been well said that the wrongful detention is the gist of the action and if it appears defendant had so much as a special property in the goods, supporting a right to immediate possession at the time, the action must fail. Sutton v. St. Louis, & S. F. Railway Co., 159 Mo.App. 685, 140 S.W. 76.

It was held in McCluskey v. De Long, 239 Mo.App. 1026, 198 S.W.2d 673, that the statute pertaining to liens on a vehicle for labor and materials does not destroy the common-law lien of an artisan who furnishes labor or materials in repair of a vehicle while in his possession; that in a replevin action to recover possession of a truck a counter-claim for the balance due for work and materials the judgment should have adjusted the equity between the parties by providing a recovery for defendant of the amount found due or for the return of the truck until such sum was paid, at option of the defendant.

We, likewise, find from the evidence that defendant had no adequate remedy at law. The sellers, by whom defendant was employed, were residents of Tennessee and had no property in Missouri. We think it is reasonable to assume that the sale of the cigarettes to plaintiff was for the purpose of keeping the sellers out of Missouri in order to recover possession of the cigarettes. Plaintiff seemed to have had nothing to do with the lawsuit. It was tried by the sellers' attorneys under testimony produced by the sellers. Neither the sellers nor the plaintiff appeared in court at the trial. This made it impossible for the defendant to bring in the sellers as parties to the lawsuit. Sellers' attorneys paid for the replevin bond and helped try the case. Sellers' bookkeeper furnished the information from which the petition was prepared and was the only witness who testified for plaintiff.

Under the evidence right and justice supports defendant's contention that he is entitled to an equitable lien on the specific property replevied for compensation for his services; that he has a lien upon such property which came lawfully into his possession during the course of the agency from which the right of compensation arises. The trial court should have determined defendant's special interest in the property and the value thereof should have been assessed. It was the duty of the court to adjust the issues between the parties as shown by the pleadings and the court should have granted defendant's prayer for an accounting and impressed the goods replevied with a lien for amount found due.

Defendant claims the right of possession because of a special interest and lien thereon and the trial court must determine that right.

We do not agree with plaintiff that the defendant's employment contract excluded an equitable lien. We agree with the law cited by the plaintiff but the facts do not sustain the contention.

It is contended by plaintiff that the statutes of this state define the circumstances for establishing liens. The law cited by plaintiff does not sustain this contention. Equitable liens are in no wise barred by the statutes of the state.

We agree with plaintiff that it is the duty of this court to try the case de novo giving due deference to the findings of the trial court, but, when this court finds that the trial court's findings are inconsistent and not supported by the testimony, it is our duty to render such judgment as the trial court should have rendered.

Judgment reversed and the cause ordered retried in accordance with the opinion of this court.

STONE and RUARK, JJ., concur.