**Howard JORRITSMA, Cross Appellee/Appellant,**

v.

**TYMAC CONTROLS CORPORATION, Cross Appellant/Appellee.**

**Nos. 88–1057, 88–1150.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 20, 1988.

Decided Dec. 22, 1988.

Rehearing and Rehearing En Banc Denied Feb. 14, 1989.

**598**

Christian Bourgeacq, St. Louis, Mo., for cross appellee/appellant.

George M. Von Stamwitz, St. Louis, Mo., for cross appellant/appellee.

Before JOHN R. GIBSON, WOLLMAN and BEAM, Circuit Judges.

WOLLMAN, Circuit Judge.

Howard Jorritsma appeals and Tymac Controls Corporation cross-appeals the United States magistrate's[1] judgment. We affirm.

Tymac Controls Corporation manufactures computer based process controls for the diecasting industry. Tymac promotes sales of its product through its own employees and through independent sales representatives and agencies. In 1980, Tymac hired Howard Jorritsma as a sales agent. It provided him with demonstrator equipment to aid him in his sales efforts.

In January of 1984, Jorritsma and Tymac entered into a "Sales Representative Agreement." Under this agreement, Tymac gave Jorritsma the exclusive right to offer Tymac's products and services in Arkansas, Kentucky, Louisiana, Mississippi, Missouri, and parts of Tennessee and Illinois. Tymac was to pay Jorritsma a fixed commission on the net amount of all orders that were accepted during the term of the agreement and that originated in Jorritsma's territory.

On January 20, 1986, Tymac gave Jorritsma notice of termination of the agreement. Under the terms of the agreement, the termination was effective ninety days after notice—April 20, 1986. Because Tymac owed Jorritsma past-due commissions on this date, Jorritsma retained the demonstrator equipment as security for the unpaid commissions.

On July 3, 1986, Jorritsma filed suit against Tymac for breach of contract. He alleged that Tymac owed him past-due commissions of approximately $40,000. Tymac filed a counterclaim for conversion of the demonstrator equipment, which Jorristma continued to retain. On April 17, 1987, the parties consented to refer their action to the United States magistrate. The magistrate awarded $40,527.74 to Jorritsma for his lost commissions and $26,587.40 to Tymac for its converted equipment. Jorrits-

---

1. The Honorable David D. Noce, United States Magistrate for the District of Eastern Missouri. The parties consented to the assignment to a magistrate pursuant to 28 U.S.C. § 636(c) (1982).

ma appeals the conversion judgment. Tymac cross-appeals the portion of the commissions judgment that was based on extraterritorial sales.

## I.

We first address the question of the extraterritorial sales commissions. In 1986, Tymac received orders from two companies that were situated in a territory that was not assigned to any agent. It received an order from Kuhlman Diecasting in Stanley, Kansas, for $24,900 in equipment and from Emerson Electric Co. in Independence, Kansas, for $25,160 in equipment. Although both of these companies were situated outside of Jorritsma's territory, Jorritsma had made repeated contacts with each company, and his sales efforts resulted in the Tymac equipment sales.

Jorritsma claims that Tymac owes him $7,509 in commissions for these two sales. Tymac, however, contends that Jorritsma was not entitled to any commissions on sales outside of his territory absent a specific mutual agreement.

The Sales Representative Agreement between Tymac and Jorritsma provided that Tymac would pay a fixed commission of fifteen percent on all orders that originated in Jorritsma's territory. Tymac, however, would not pay a commission to Jorritsma for sales to customers located in another agent's territory. The agreement was silent regarding the question of whether Jorritsma was entitled to commissions for sales to customers located in territories that were not assigned to any agent.

■ The magistrate awarded Jorritsma commissions on the extra-territorial sales on the theory of quantum meruit, under which the law implies a promise that a person will pay a reasonable and just compensation for valuable services or materials provided at that person's request or with that person's approval. *See Berra v. Bieg Plumbing Co.*, 584 S.W.2d 116, 118 (Mo.Ct.App.1979). Recovery is permitted under quantum meruit if it is proved that services were provided at the request or with the acquiescence of defendant, that those services had a certain reasonable value, and that defendant, despite demands of plaintiff, has failed and refused to pay the reasonable value of plaintiff's labor. *See Berra v. Papin Builders, Inc.*, 706 S.W.2d 70, 73 (Mo.Ct.App.1986).

■ In this case, the necessary elements of quantum meruit are present. The magistrate found that Jorritsma "expended substantial energies" in the extraterritorial sales and that Tymac approved of these services through its knowledge of, and failure to object to, these services. In addition, the record shows that Jorritsma requested commissions for the extraterritorial sales, yet never received them. Because the written agreement is persuasive evidence of the reasonable value of Jorritsma's services, *cf. Berra v. Bieg Plumbing Co.*, 584 S.W.2d at 119, Jorritsma is entitled to a fifteen percent commission on the extraterritorial sales, or $7,509.

## II.

We next address the conversion of the demonstrator equipment. Jorritsma claims that he is not liable for conversion because he was legally entitled to retain possession of the equipment. He contends that because Tymac owed him substantial commissions when Tymac terminated the agency agreement, he had an equitable lien on Tymac's equipment. We disagree.

■ Under Missouri law, the doctrine of equitable lien applies only in cases in which the law fails to give relief and justice would suffer without the equitable remedy. *Wilkinson v. Tarwater*, 393 S.W.2d 538, 542 (Mo.1965). "[G]enerally there must be an express agreement, or conduct or dealings of the parties from which an intention may be implied, that some specific property shall be appropriated as security for a debt or obligation before equity will consider that a lien should be declared on the property." *Id.*

■ Jorritsma's claim to an equitable lien fails for two reasons. First, Jorritsma, as evidenced by this lawsuit, had an adequate remedy at law through which he could recover his commissions.

Jorritsma contends that he had no adequate remedy at law because Tymac was insolvent at the time of contract termination. Jorritsma's contention, however, is at variance with the magistrate's factual findings. The magistrate specifically found that Tymac was not generally insolvent. Because we do not find that the magistrate's finding was clearly erroneous, we hold that Tymac had an adequate remedy at law and therefore did not have an equitable lien.

Jorritsma's equitable lien claim also fails because Jorritsma and Tymac did not agree that the demonstrator equipment should be appropriated as security for the past-due commissions when the agreement was terminated. In fact, section 8(C) of the Sales Representative Agreement specifically provided otherwise: "Any machines, spares or other hardware, or any property of Tymac held by Agent at time of contract termination shall be returned to Tymac." This provision contradicts Jorritsma's claim that he had a right to retain the equipment. *See Restatement (Second) of Agency* § 464 comment c (1958).

Jorritsma contends that section 8(C) of the agreement does not preclude an equitable lien because Tymac breached the agreement prior to termination by not paying the commissions due. He claims that Tymac should not benefit from an agreement that it previously breached. Jorritsma's contention, however, is contrary to the magistrate's findings of fact. The magistrate found that the evidence was sufficiently clear that both parties were in violation of the contract at the time of termination and that they were negotiating to settle their differences. "While it was true that Tymac owed Jorritsma commissions, the amount was unliquidated and plaintiff did not clearly demand payment until [after notice of termination]." *Jorritsma v. Tymac Controls Corp.*, No. 86–1367C(6), slip op. at 2 (E.D.Mo. Dec. 3, 1987). Because we find no clear error in the magistrate's finding that the contract was in force up to the termination date, section 8(C) controls. Jorritsma agreed to return the equipment upon termination and therefore cannot claim an equitable lien.

■ Jorritsma wrongfully retained Tymac's property and is therefore liable to Tymac for conversion. Tymac is entitled to the fair market value of the equipment at the date of conversion, together with the loss of use. *NIKA Corp. v. City of Kansas City, Missouri*, 582 F.Supp. 343, 357 (W.D.Mo.1983).

The judgment is affirmed.

BEAM, Circuit Judge, concurring and dissenting.

I fully concur in the affirmance of the trial court's judgment in favor of Jorritsma for commissions, and in the determination that Jorritsma was not the holder of an equitable lien. In my view, however, that does not end the inquiry. Under the undisputed facts, Jorritsma had a property interest in the demonstrator which resulted in a common law lien. Therefore, I respectfully dissent from the majority holding which affirms the judgment against Jorritsma based upon conversion. I would reverse that judgment of the trial court and dismiss the Tymac counterclaim.

The principal case in Missouri on the subject of equitable liens is *Sidney Smith, Inc. v. Steinberg*, 280 S.W.2d 696 (1955). An application of *Sidney Smith* to the facts of this action leads to a conclusion that Jorritsma did not have an equitable lien. However, as *Sidney Smith* points out, quoting *Pomeroy's Equity Jurisprudence:*

"The equitable lien differs essentially from the common-law lien, which is simply a right to retain possession of the chattel until some debt or demand due to the person thus retaining is satisfied; and possession is such an inseparable element, that if it be voluntarily surrendered by the creditor, the lien is at once extinguished."

*Sidney Smith*, 280 S.W.2d at 704 (quoting 3 *Pomeroy's Equity Jurisprudence* § 1233, at 2959 (4th ed.)).

Here, Jorritsma was owed, as it turns out, $40,527.74 in commissions. The demonstrator equipment was supplied by Tymac to generate the sales which generated

the commissions and, presumably, also generated profits for Tymac. As further stated in *Sidney Smith:*

"An agent who is entitled to be reimbursed from the principal for expenses incurred, advances made, or losses sustained during the course of the agency, or *who is entitled to compensation for his services,* has a [common-law] lien upon the principal's goods or property which comes lawfully in his possession during the course of the agency from which the right to indemnity or compensation arises."

*Sidney Smith,* 280 S.W.2d at 704 (quoting 3 C.J.S. *Agency* § 200, at 109). Thus, Jorritsma had a property interest in the demonstrator until his commissions were paid and had a right to retain the demonstrator until payment occurred. Under the circumstances, there could be no conversion.