G. W. HARDISON v. JOSEPH M. REEL.

(Filed 8 March, 1911.)

1. Precedence—Authority.

It is, at least, a persuasive argument against the maintenance of an action for an alleged wrong that, in the manifold complexity of human affairs, no appeal for the redress of a like grievance has found its way into the courts.

154—18

2. Contract—Sealed Bids—Mail Carrier—Promise—Tort—Legal Right.

Conduct, though improper and causing loss to another, does not constitute a tort unless a legal, as distinguished from a moral, right is violated, and the damage conforms to the legal standard, except where it is presumed, as in the case of nominal damages.

3. Same—Suppress Competition—Conspiracy—Notary Public—Interpretation of Statutes.

One who makes a sealed bid required for the contract of carrying the United States mails cannot sustain an action for damages against the notary public before whom the bond was justified, in accordance with the Federal statute, upon the ground that he requested the notary not to divulge the amount of his bid, and the notary, knowing the amount, underbid him and obtained the contract. (1) There has been no violation of a legal duty alleged or shown; (2) had the notary promised not to compete with plaintiff in the biddings, it would, as an agreement to suppress competition, have been against public policy, the notary being qualified to bid under the circumstances; (3) the fact that defendant acted as a notary in his official capacity would not make him liable upon the breach of promise, if one was implied, to do an unlawful act; (4) a promise of the kind sued on is expressly condemned by the Federal act in question.

4. Contracts—Mail Carrier—Right to Reject Bids—Damages Consequential.

Under the Federal statute regulating the bidding by private parties for a contract to carry the United States mail, the department of the Government reserves the right to reject any and all bids if, in its judgment, the good of the service requires it. Hence, damages are too contingent to be recoverable by one in an action against a notary before whom his bond was justified, as required by the statute, which is based upon the allegation that the notary used the information he thus acquired to underbid the plaintiff and obtain the contract. The plaintiff may or may not have received the contract.

APPEAL from *Ward, J.,* at October Term, 1910, of PAMLICO. The facts are sufficiently stated in the opinion of the Court by *Mr. Justice Walker.*

*D. L. Ward, W. D. McIver, W. T. Caho, and Z. V. Rawls for plaintiff.*
*Simmons & Ward and Moore & Dunn for defendant.*

---

---

WALKER, J.  The following is plaintiff's case: He had been a mail carrier from Grantsboro to Kershaw in this State, and his term, fixed by contract, was about to end, when he applied to the proper branch of the Government for another term of four years.  The rules of the department required that advertisement should be made for bids, which should be sealed and sent to the Post-office Department and accompanied by a bond, prepared and justified, according to official directions, before an officer qualified to administer an oath, blank forms being furnished for that purpose.  Contracts for carrying the mails are usually let to the lowest bidder.  Plaintiff handed the blank bond to the defendant, who was a notary public, and requested him to fill it out for him, which he did, and then administered the oath to the surety, who justified, and the bidder. The plaintiff paid the notary's fee of $1 and told him that he did not want any one to know the amount of his bid, which was $800.  A few days after the plaintiff's bid and bond had been filed with the department, he learned that the defendant had underbid him, at first bidding $794, and afterwards lowering his bid to $736.  Plaintiff, when he received this information, attempted to change his bid, but found that he was too late, as the time for receiving bids had expired.  The contract was awarded to the defendant, and the plaintiff brings this action to recover damages, upon the theory that he lost the contract by the conduct of the defendant, and, therefore, in contemplation of law, has been injured.  The judge who presided at the trial thought otherwise, and rendered judgment of nonsuit, from which the plaintiff appealed.

This seems to be an action of first impression.  We have not been able to find any precedent for it.  This circumstance, of itself, forms quite a strong objection to it, though not an insuperable one, but "if a case in law has no cousin or brother, it is a sure sign that it is spurious."  It is, at least, a persuasive argument against the maintenance of an action for an alleged wrong that, in the manifold complexity and variety of human affairs, no appeal for the redress of a like grievance has found its way into the courts.  Conduct, though improper and causing a loss to another, does not constitute a tort, unless

a legal, as distinguished from a moral, right is violated, and the damage conforms to the legal standard (1 Jaggard on Torts, p. 86), except where it is presumed, as in the case of nominal damages. *Chaffin v. Mfg. Co.,* 136 N. C., 364. In administering the law, courts have nothing to do with the moral quality of an act where no legal right is invaded. This rule finds an illustration when one person trusts to the mere gratuitous promise of favor from another. The law will not protect him from the consequences of his undue reliance upon the integrity of the other party to the promise, and will not hold the latter liable for its infringement by faithlessness and treachery. 1 Cyc., 645. So, in this case, the plaintiff has been the victim of misplaced confidence, and that, we think, is all there is to it. We might sympathize with him and reprobate the conduct of his alleged betrayer, but cannot help him. But is he free from blame? Does he come before us with clean hands? We will see. The plaintiff told the defendant, at the time the latter administered the oath, that he must not disclose the amount of his bid to any one. This is all that was said, and it was intended to prevent competition. The defendant did not promise to comply with the request, unless his silence implied a promise of that kind. But if he had, the plaintiff's situation would not be improved. He is not sued for a breach of any such promise, but because, as plaintiff alleges, he was forbidden by the circumstances to compete with him by bidding for the contract. The defendant was the successful bidder for the contract, and no one else. But if there had been plenary evidence of such an arrangement between them (and there was none), would it entitle the plaintiff to recover? We think not. It would at least place him in the unenviable position of conspiring with the defendant to suppress competition, and thereby to injure the Government, which is morally and legally wrong. The plaintiff insists, however, that the defendant was acting in an official character, and for his services received his fee, and sustained a confidential relation towards him, and therefore impliedly agreed not to bid. But is an implied promise, if there was such, to do an illegal act, any better than an express one, as the foundation of a

legal right for the violation of which an action will lie? The illegal purpose infects the whole transaction and destroys all right of action, if otherwise there would be one. The authorities clearly recognize the principle that where an agreement, without regard to its form, is made for the purpose of preventing free and fair competition, or of stifling or chilling biddings at public sales, or in the letting of contracts by the Government, or for the purpose of giving undue advantage to either of the parties thus engaged in dealing with reference to the biddings, it is contrary to public policy and void. *King v. Winants,* 71 N. C., 469; *Blythe v. Lovingood,* 24 N. C., 20; *Hoffman v. McMullan,* 83 Fed. Rep., 372; *Atchison v. Mallon,* 43 N. Y., 147; *Weld v. Lancaster,* 56 Me., 453; *Bellows v. Russell,* 20 N. H., 427; *Hannah v. Fife,* 27 Mich., 172. Such an agreement as the one in question was held to be void in the following cases: *Kennedy v. Murdick,* 5 Harrington (Del.), 458; *Gulick v. Ward & Bailey,* 10 N. J. Law (5 Halst.), 87; *Swan v. Corpening,* 20 Cal., 182; *Sharp v. Wright,* 35 Bard., 236. See *Ray v. Mackin,* 100 Ill., 246; Greenwood on Public Policy, pp. 178-9. The law under which the Post-office Department is authorized to let contracts for carrying the mails by competitive bidding expressly condemns such an agreement, and if any person holding a contract of the kind attempts to suppress biddings for a new term, he is disqualified to bid for five years, and if his offense is repeated, he becomes forever ineligible as a bidder. 2 U. S. Comp. Statutes, sec. 3950. As no enforcible right can be founded upon an agreement the effect of which is to prevent or diminish competitive bidding for public contracts (*Hunter v. Pfeiffer,* 108 Ind., 197), the defendant was left free to bid for himself, and wrong can never be predicated on an act which the law permits. 1 Jaggard on Torts, p. 89.

But if the plaintiff had technically a good cause of action, he could not recover substantial damages, as it was by no means certain that he would have received the contract if defendant had not intervened with his bid. The department, under the law, reserves the right to reject any bid if, in its judgment, the good of the service requires such a course to be

taken, and when this contingency exists, we have held that there can be no consequential damages, *Walser v. Tel. Co.,* 114 N. C., 440; *Machine Co. v. Tobacco Co.,* 141 N. C., 284; if in such a case there can be a cause of action, which we need not decide.

No error.