HARRY SANDERS, v. SYDNEY BROOKS AND CLELLIA BROOKS,—194 S.W. (2d) 540.

Kansas City Court of Appeals. April 1, 1946.

*Frank F. Catron,* for appellant.

*Blackwell & Sherman,* for respondents.

CAVE, J.,—This is an appeal by plaintiff from a judgment of the Circuit Court of Lafayette County.

The suit was begun by plaintiff filing a petition in replevin in a justice of the peace court, alleging that he was entitled to the possession of four certain hogs, and that defendants wrongfully detained them. In effect the answer was a general denial. No bond was given by plaintiff and the property remained in the possession of the defendants. The trial resulted in a judgment for the defendants and plaintiff appealed.

In the circuit court plaintiff amended his petition by increasing the value of the hogs and decreasing the amount of damages claimed. Defendants filed amended answer more specifically referred to hereafter.

The cause was tried to a jury, resulting in a verdict to the effect that at the commencement of this suit plaintiff was the owner of the hogs, but that defendants then had a lien on said hogs, which lien had never been paid or tendered to the defendants, and that defendants, as against plaintiff were entitled to the possession of the hogs. Judgment was rendered accordingly, and plaintiff appealed.

Plaintiff makes several assignments of error, but they are all directed at: (a) The giving and refusing of certain instructions; and (b) whether defendants had an agister's lien on the hogs and, if so, did they waive or lose that lien by certain acts and events mentioned in evidence?

The evidence is to the effect that in March, 1942, plaintiff rented from defendant Clellia Brooks a small house and about three acres of ground, and when he moved to this property he brought with him two of the hogs in controversy. Shortly thereafter defendant Sydney Brooks found these two hogs in his feed lot and learned they were being fed with his corn. He notified plaintiff that he must pay for the feed or move the hogs. Plaintiff moved the hogs to a farm belonging to Sydney Brook's mother, but he was renting her land and the hogs were put in his feed lot on that farm and fed his corn. In June plaintiff was con-

victed and sentenced to ninety days in jail. While he was serving this sentence Sydney Brooks asked him if he should continue to feed and take care of the hogs which was done by both defendants. In September, 1942, when plaintiff got out of jail, he went to work for Sydney Brooks and continued there until he was discharged December 13th following. The evidence was conflicting as to whether he had been paid his wages. He testified that he must have had about $135 still due him; while Sydney Brooks testified all had been paid except $12.50, and that he tried to settle with plaintiff at that time but plaintiff would not agree to allow anything for the feed and care of the hogs, although he does not testify that feed and care of the hogs were to be any part of his wages. In August, 1942, one of the hogs, which had originally been brought to the farm, gave birth to two pigs. When plaintiff and Sydney Brooks failed to settle their controversy in December, four hogs remained in the feed lot of Sydney Brooks until July 31, 1943, at which time the two older hogs were sold by the constable under an execution in favor of defendant Clellia Brooks upon a judgment for rent which she had secured against plaintiff in another justice of the peace court. The two hogs sold for $118 and, after satisfying the judgment and costs, there remained $21.62, which the constable tendered to plaintiff by a check made payable to plaintiff and his attorney, but the check has not been cashed. The other two hogs remained in the Brooks' feed lot until one died in August, 1943, and the other was sold by Sydney Brooks in October, 1944, for $61.83. There was evidence that the reasonable value of the feed consumed by the hogs during the time they were there was $135, and that plaintiff had at all times refused to pay anything for such feed.

Plaintiff first contends that no agister's lien arose in this case because the plaintiff was an employee of defendant, Sydney Brooks, and the bringing of his two hogs onto the land was merely incidental to his employment. He cites the case of Wright v. Waddell, 89 Ia., 350. That case is not in point. There the farm hand brought his stock onto the employer's land as a part of the employment; not so in the present case, and besides he was not a regular employee of Brooks; he worked at irregular intervals.

Plaintiff next complains that the court erred in refusing his instructions No. 2, 7 and 8. These instructions submitted to the jury the question of whether defendants had lost or waived their lien because two of the hogs were seized and sold under an execution issued on the judgment in favor of one of the defendants. It is generally held that where goods in the possession of one having a lien on them are attached at his suit or by his instigation his lien is lost. [37 C. J., Sec. 54, p. 335.] But under such circumstances the lien is lost only as to that portion so attached or surrendered and does not release the remaining portion from the burden of the whole lien. [3 C. J. S., p. 1123.] Therefore, the seizing and sale of the two hogs under an execution on

behalf of one of the defendants was not, of itself, a release of the lien of both defendants as against the two remaining hogs. The cases cited by plaintiff are ruled on a set of facts where *all* of the property has been sold under a prior judgment by the defendant. In this case only *part* of the property was sold and the lien remained on the property not sold. The court did not err in refusing plaintiff's instructions 2, 7 and 8 in their present form.

The most serious question presented concerns the refusal of the court to give plaintiff's instructions No. 3 and 6, and the giving of defendants' instructions Nos. 1, 2 and 4. Plaintiff's refused instructions, among other things, sought to require the jury to find the amount of defendants lien, if any; while defendants' instructions directed the jury to return a verdict for them if the jury should believe and find that defendants had a special lien on the hogs without requiring the jury to determine the amount of the lien. · As a result the jury found, in effect, that the plaintiff, at the time of the filing of the replevin suit, was the owner of the hogs but that defendants had a lien thereon and plaintiff was not entitled to possession and made no finding as to the amount of the lien.

When plaintiff filed his suit in the justice of the peace court he did not give bond and take possession of the hogs under the writ. Defendant's answer admitted that plaintiff was the owner of the hogs at the time the suit was filed; that the property was in their possession and that it had not been seized under any process, execution or attachment against the property; but denied he was entitled to the possession, because two of the hogs had been taken and sold under a proper execution and, also, that defendants had an agister's lien on the hogs for feed and that plaintiff had not paid such lien and was therefore not entitled to maintain his suit for possession. To this answer plaintiff replied, denying defendants were entitled to a lien and also that they had lost their lien, if any, by virtue of surrendering the possession of the two hogs to the constable under the execution.

In the trial of the case the question of ownership was not disputed. Most of the evidence concerned the issue of whether the defendants were entitled to an agister's lien and, if so, for what amount? Defendants claimed they had fed $135 worth of feed to the hogs during the time they had them in their possession. This was disputed by the plaintiff and, from reading the record, it is apparent defendants' testimony as to the actual amount of feed given the hogs was somewhat indefinite and speculative. Certainly the amount of the lien was never agreed to by the parties or determined by verdict and judgment.

At the time of the trial in the circuit court defendants did not have possession of any of the hogs, because two of them had been sold under execution; one had died, and the defendants had sold the other one. It is plaintiff's contention that under the pleadings and the evidence the court should have submitted to the jury, by proper in-

structions, the question of the value of the hogs at the time they left defendants' possession and, also, the question of the amount of defendant's lien at that time. Defendants contend to the contrary and argue that since plaintiff did not take possession of the hogs under his writ at the time of the filing of the suit, and since the jury found that defendants were entitled to a lien on the hogs, then plaintiff's cause of action in replevin failed and he is entitled to no relief in this proceeding.

Defendants state their position in this manner. "We contend that the replevin law is that where the prevailing party has only a limited or special interest instead of the ownership, *and the other party has not obtained possession under the writ,* neither the value of such special interest nor the value of the property need be assessed,. . . ." because under such circumstances "plaintiff is not entitled to any judgment at all for the reason that he is not entitled to judgment unless he is entitled to possession and he has been adjudged to be not entitled to possession."

The rule is that "Replevin suits are generally flexible enough to permit an adjustment of the real rights of the parties, and where the prevailing party has only a limited or special interest in the property instead of the ownership, *and the other party has obtained possession under the writ,* the value of such special interest only should be assessed." [Smith v. Tucker, 200 S. W. 707, 708; Zahner Mfg. Co. v. Harnish, et al., 51 S. W. (2d) 145, 146; Dilworth v. McKelvy, 30 Mo. 149.] In the Zahner Mfg. Co. case, *supra,* we said (146) : "In actions in replevin it is the trial court's right and duty to adjust all issues.between the parties as shown by the pleadings concerning the property involved." (Citing cases.) (Italics ours).

We can see no good reason why defendants' special interest should be determined and assessed when plaintiff takes possession of the property under a replevin writ and should not be determined and assessed when plaintiff merely files a replevin suit without giving bond and taking possession of the property under the writ. In Ex parte Irwin, 6 S. W. (2d) (Mo.) 597, 601, the court en banc held that the giving of the bond and taking possession of the property under the writ "determines nothing concerning the ultimate right of the parties to the possession of the property. They simply determine the right to its custody, pending the outcome of the suit." It would seem to follow that if the taking possesion of the property under the writ is of no consequence in determining who was ultimately entitled to the possession, then the failure to take possession under the writ should be of no consequence in determining who was ultimately entitled to the possession, and especially so when defendants, by their pleadings, claim possession only on an unliquidated demand.

Our courts uniformly hold that where a plaintiff takes possession of the property under the writ and the defendant claims the right to

possession because of a lien, then upon the trial of the cause the amount of the lien must be determined. [Dilworth v. McKelvy, *supra;* Pickett v. McCord, 62 Mo. App. 467; Varner v. Jackson, 66 Mo. App. 348; Bank v. Snider, 85 Mo. App. 82; Zahner Mfg. Co. v. Harnish, et al., *supra.*] If that be true, then why should not the same issue be submitted and determined when plaintiff has not taken possession of the property under the writ? We can see no reason for any such distinction.

The court should have, by proper instructions, required the jury to determine whether the defendants had a lien and, if so, the amount thereof. It was error not to do so and, to that extent, the verdict and judgment are incomplete and do not settle the issues made by the pleadings. Pickett v. McCord, *supra,* l. c. 472. Neither the plaintiff nor the defendants now know the amount of the lien.

Defendants cite a number of cases which, they contend, support the proposition that if the plaintiff does not take the property under the writ and the evidence shows that they have a lien on the property, then plaintiff's cause of action fails without the necessity of the jury assessing the amount of the lien. Some of such cases are: [Zahner Mfg. Co. v. Harnish, et al., *supra;* Smith v. Tucker, *supra;* Major v. Hast, 263 S. W. 466; Kerman v. Leeper, 172 Mo. App. 286; Hinshaw v. Thornhill, 27 S. W. (2d) 776; Weber Implement Co. v. Dunard, 140 Mo. App. 476; Rankin v. Wyatt, 335 Mo. 628; Sutton v. Railway Co., 159 Mo. App. 685.] The above cases follow in principle the general rule announced by the Supreme Court in Rank v. Wyatt, *supra,* wherein the court said (633):

"Although a plaintiff in replevin should plead and show some property right or interest in the chattel involved, that property right or interest is but ancillary to the dominant right of possession. And it has been well said that 'the wrongful detention is the gist of the action, and if it appears defendant had so much as a special property in the goods, supporting a right to immediate possession at the time, the action must fail.' [Sutton v Railway Co., 159 Mo. App. 685, 140, S. W. 76]. In the latter case the owner of household goods was denied the right to replevin his property from a common carrier which had a lesser but rightful interest to the extent of a lien for unpaid freight charges. Many cases from this and other jurisdictions might be cited to show that the right of possession of the owner of personal property must yield to the superior right of one having a lien or other lesser interest."

But we do not understand that any of those cases hold that it is not necessary for the jury and the judgment to determine and fix the amount of the lien, or lesser interest, where the amount is in dispute. Of course if the amount of the lien is agreed to or is fixed by the judgment and the plaintiff does not pay or tender the amount of the lien, then he is not entitled to the possession of his property. Defen-

586

dant's argue here that "all that the general owner has to do to retake his property from anyone claiming a lien thereon is to tender the amount justly due to the lienee." Of course that is true if the amount is not disputed, but must the owner pay any amount claimed by the lienee without the right to submit that issue to the jury? We think not. When our courts say that it is the right and duty of the trial court, in replevin actions, to adjust all issues between the parties as shown by the pleadings concerning the property involved, they must have in mind such issues as are presented herein. We do not believe the cases cited and relied on by defendants rule the specific point under consideration.

We conclude that the trial court erred in not submitting to the jury, by proper instructions, the question of whether defendants had an agister's lien and, if so, the amount thereof. The court can adjust the equities by its judgment when that issue is settled by verdict.

It follows that the judgment should be reversed and cause remanded. It is so ordered. All concur.