Lee COONIS, Plaintiff-Appellant,

v.

Johnie E. ROGERS and Joroco Enterprises, Inc., a Corporation, Defend-ants-Respondents,

v.

SPRINGFIELD CITY REFUSE COLLEC-TION, INC., a Corporation, Third-Party Defendant-Appellant.

No. 53244.

Supreme Court of Missouri, Division No. 1.

July 8, 1968.

 

Neale, Newman, Bradshaw, Freeman & Neale, O. J. Taylor, Springfield, for appellants.

Lincoln, Haseltine, Forehand & Springer, Edmund C. Forehand, Carl E. Yates, William A. Moon, Springfield, for respondents.

HOUSER, Commissioner.

This is an appeal from a final judgment entered by the trial court following the dismissal as premature of the first appeal in this case, which was taken to the Springfield Court of Appeals. That court found that the first judgment entered was not a final appealable judgment because there was no disposition of Count III of the petition. For a capsule history of the case, a review of the pleadings and the content of the first judgment (helpful in fully understanding what follows) see the opinion of the court of appeals. Coonis v. Rogers, Mo.App., 413 S.W.2d 310.

The deficiency was supplied by the entry of a new and amended judgment on May 1, 1967 which, with respect to Count III of the petition, contained a finding for Plaintiff Lee Coonis and against Defendants Johnie E. Rogers and Joroco Enterprises, Inc., and assessed damages on said count in the amount of $7,281.86. The trial court amended its original finding on Count I of Defendants' Amended Counterclaim by awarding damages to defendants Rogers and Joroco in the amount of $10,000 (instead of $10,000 less $7,271.86, as in the first judgment). The trial court amended the judgment entry accordingly. In its new and final form, the judgment awarded plaintiff Coonis nothing on Counts I and II and awarded him $7,281.86 on Count III, of his petition; awarded defendants Rogers and Joroco amounts as follows on their Amended Counterclaim: $10,000 on Count I; $2,000 on Count II, and $7,500 on Count IX. Defendants Rogers and Joroco were awarded an injunction on Count VIII, but were adjudged to take

nothing on Counts III, IV, V, VI and VII of their Amended Counterclaim.

Defendants Rogers and Joroco have not appealed from the judgment against them on Count III of plaintiff's petition or from the judgment against them on Counts III, IV, V, VI and VII of their Amended Counterclaim. Plaintiff Coonis appealed from the entire judgment of May 1, 1967, but the only points briefed by plaintiff Coonis charge error with respect to the judgment rendered against him on Counts I, II and IX of the counterclaim. Accordingly, the judgments on Counts I, II and III of the petition and on Counts III to VII, both inclusive, of the counterclaim, have become final, and our concern on this appeal is limited to the action taken on Counts I, II and IX of the counterclaim. We have jurisdiction on account of the amount involved, since the total amount of the judgments on Counts I, II and IX exceeds $15,000.

Appellants Lee Coonis and Springfield City Refuse Collection, Inc. challenge the sufficiency of the evidence to support the judgments entered against them on Counts I, II and IX of Defendants' Counterclaim in this court-tried case.

### Count I.

In this count defendants Rogers and Joroco (assignee of the contract of March, 1964) alleged that since May 5, 1965 plaintiff Lee Coonis, individually and as agent for Springfield City Refuse Collection, Inc., and the corporation, intending to harass, annoy, persecute, injure, destroy and interfere with the prosecution of defendants' business, intentionally, maliciously, and without justification or excuse induced, persuaded, enticed and procured defendants' customers to cancel, break and repudiate their contracts with defendants and to have no business relations or transactions with them and induced them to contract with plaintiff, by the use of false, malicious and fraudulent representations, "some of which were to the general tenor and effect that Defendants were unreliable, insolvent and unable to furnish the goods and services contracted for"; that plaintiff and the corporation, intending to damage Joroco and prevent Joroco from executing its contracts with its customers, placed sugar in the gasoline tank of Joroco's truck; that in order to annoy and confuse Joroco's customers plaintiff and the corporation picked up six trash containers from their customers and delivered them to other customers of Joroco; that plaintiff and the corporation telephoned Joroco's customers and told them that Joroco's equipment had been replevined so that Joroco was no longer in business and sent bills to Joroco's customers, informing them to send all monies due Joroco to plaintiff and his assignee company, Springfield City Refuse Collection, Inc.

To sustain the charges of unwarranted and malicious business interference defendant Rogers testified that Coonis started "picking up" his customers on the south side and hauling their trash about the first of May, 1965, about the time this lawsuit was filed; that Coonis picked up "quite a few"; that some of his customers told him they were quitting and that Coonis was going to collect their trash. Some of Rogers' customers turned over to him invoices sent to them by Coonis. Rogers named four new accounts on the south side not being serviced by Rogers when he took over the route—accounts which Coonis began to service after Rogers acquired the business. He produced four statements issued by Coonis' assignee, Springfield City Refuse Collection, billing four customers on the route. Three bills were for $25, one for $15, and they were all marked "July col." Rogers was unable to testify how much his customers had paid to Coonis.

Respondents called ten customers as witnesses. One of them, a Mr. Freeman, testified that Rogers had been picking up his trash; that after having had trouble for a day or two in getting his trash picked up Freeman called Coonis, who said that Rogers had had the route but that he [Coonis]

was "taking it back over"—that Rogers had not paid him for it and that he, Coonis, would haul for Freeman if he wished. From that time on Freeman paid Coonis' assignee. The payments amounted to $15 a month for a month or two, then $25 a month. Another, one Napolitano, testified that somebody (he did not know whether it was Coonis or not) called him and said that he was going to pick up the trash again; that Johnie was not going to pick it up. Then he received invoices from both haulers. He called Rogers, who told him to pay Rogers. He did so, and did not pay Coonis' assignee. One Kistler got a bill from Coonis' assignee in August, 1965 but did not pay it. Instead he paid Rogers. Customer Ferrell testified that in the summer of 1965 "a fellow" whose name he did not know came in and said he was taking over the route, through Mr. Coonis. Later he received statements from Coonis, but did not pay them. Customer Carman said that in the summer of 1965 both companies were picking up his trash; that he called the office of Coonis' assignee with directions to discontinue the pickup service, and later received billings from Coonis' assignee which he did not pay. Customer Hall testified that Coonis began picking up his trash May 1, 1965; that he had paid Coonis a total of $30 since that time. Customer Pierce got invoices from both companies in the summer of 1965. He wrote Joroco, stating that he would not honor its invoice until one or the other of the companies recalled its invoice, and has not paid either of them since June, 1965. Coonis was charging him $25 a month; Rogers was charging $15. Customer Brown, apparently dissatisfied with Rogers' service, called Coonis and asked him to pick up the trash. Coonis said that he would take care of it. Coonis did not solicit this customer. Customer Randolph testified that he got billings from both companies and that neither would be paid until it was decided who was entitled to payment. Coonis supplemented respondents' evidence by admitting that he started picking up commercial trash for customers on the south side on June 21, 1965; that he hauled for sixteen named customers between May, 1965 and trial time in April, 1966 and that they paid him various amounts which totaled approximately $700 during that period.

Respondents' claim under Count I is a tort claim for interference with contractual relationships based principally upon charges of malicious procurement of the breach of contracts between respondents and their customers on the trash route. An effort was made to bring this case within the purview of our holding in Downey v. United Weatherproofing, Inc., 363 Mo. 852, 253 S.W.2d 976. There it was announced that "one who maliciously or without justifiable cause induces a person to breach his contract with another may be held responsible to the latter for the damages resulting from such breach" and that "maliciously" as thus used alludes to malice in the technical sense, that is, the intentional doing of a harmful act without justification or excuse. 253 S.W.2d, l.c. 980 [4].

■ On our independent review we find that Coonis and his assignee, without justification or excuse, in violation of a court injunction, and with full knowledge of the situation, either induced or acquiesced in the cancellation, breaking and repudiation of existing trash-hauling contracts with approximately twenty of respondents' customers, and personally or through his assignee took over these contracts for his own use and benefit. We do not find that Coonis and his assignee made the false, malicious and fraudulent representations alleged in Count I. The latter, however, is not an essential element of liability, it being sufficient to show that Coonis and his assignee intentionally took customers away from Rogers and Joroco with knowledge of the existing contracts and without justifiable cause. Downey, supra, 253 S.W.2d, l.c. 980, 981 [6].

■ The challenging question is whether there is an evidentiary basis for the $10,000 judgment. In evaluating the sufficiency of evidence to sustain awards of

damages for loss of business profits the appellate courts of this state have made stringent requirements, refusing to permit speculation as to probable or expected profits, and requiring a substantial basis for such awards. Tnemec Company v. North Kansas City Development Co., Mo.Sup., 290 S.W.2d 169, 174. "The general rule as to the recovery of anticipated profits of a commercial business is that they are too remote, speculative, and too dependent upon changing circumstances to warrant a judgment for their recovery. [Citing cases.] * * * They may be recovered only when they are made reasonably certain by proof of actual facts, with present data for a rational estimate of their amount; and, when this is made to appear, they may be recoverable." Morrow v. Missouri Pac. Ry. Co., 140 Mo. App. 200, 123 S.W. 1034, 1038, cited and quoted with approval in Anderson v. Abernathy, Mo.Sup., 339 S.W.2d 817, 824. Generally, the measure of damages for procuring the breach of a contract "is the loss either of property or of personal benefit, which, except for such interference, the plaintiff would have been able to attain or enjoy, including such loss of profits as the plaintiff can prove to have resulted directly and proximately from the wrongful acts." 30 Am.Jur. Interference § 59, p. 94. Loss from the interruption of an established business may be recovered "where the plaintiff makes it reasonably certain by competent proof what was the amount of his profits," Morrow v. Missouri Pac. Ry. Co., 140 Mo.App. 200, 123 S.W. 1034, 1039, "but proof of the income and expenses of the business for a reasonable time anterior to its interruption, with a consequent establishing of the net profits during the previous period, is indispensable. Fuchs v. Curran Carbonizing & Engineering Co., Mo. App., 279 S.W.2d 211." Anderson v. Abernathy, supra, 339 S.W.2d 824.

◼ The only proof of damages for procuring breach of customers' contracts is that Coonis and his assignee collected approximately $750 from the customers. This is a gross, not a net, figure. It does not take into consideration (and there is no evidence as to) the factor of depreciation of the value of the equipment or the out-of-pocket cost and expense of collecting the trash. The cost and expense of operation, including depreciation (wear and tear), is a considerable item and in a suit for loss of profits is an essential item in the proof of damages. Coonis v. City of Springfield, Mo.Sup., 319 S.W.2d 523. And see Grant v. St. Louis, I. M. & S. Ry. Co., 149 Mo.App. 306, 130 S.W. 80, 82 [4]; Morrow v. Missouri Pac. Ry. Co., supra. This essential element in the proof of damages was not made.

The gross receipts from the business for the 10-month period before the interference began totaled $19,861. For the 10-month period thereafter the gross receipts were $19,896. No loss of gross income as a result of the interference was thus established, but it is the *net* loss, not the gross, that must be established and there was no proof of the cost and expense of operating the business during these periods.

Because of these gaps in the proof net losses (or profits) could not and cannot be ascertained. There is no evidentiary basis for an award of damages for procuring the breach of the customers' contracts.

◼ Rogers and Joroco seek to justify the $10,000 award on the ground that the cancellation of customers' contracts was procured by the use of false, malicious and fraudulent representations; for example, that respondents were unreliable, insolvent and unable to furnish the goods and services for which they had contracted. This position would have substance if the proof supported the charge. False statements tending to prejudice or injure a person in his business by imputing to him want of knowledge, skill, or capacity to perform or discharge the duties of the business, Heitzeberg v. Von Hoffmann Press, 340 Mo. 265, 100 S.W.2d 307, or that he has failed in business, 33 Am.Jur. Libel and Slander § 59, p. 77, or that he is unreliable, insolvent, and unable to comply with the contract. Down-

ey v. United Weatherproofing, Inc., supra; 53 C.J.S. Libel and Slander § 43, p. 93, are actionable. The difficulty is that there is no such proof in this record. The nearest approach is the testimony of customer Freeman that Coonis told him that Rogers had not paid him for the route and that Coonis was taking it back. At most, however, this constituted a representation that Rogers had failed to make payments under a contract of sale and that the seller had repossessed the business. In the common and ordinary meaning of these words there is no imputation of insolvency or want of credit. Many reasons may exist for failure to pay not connected with insolvency, unreliability, inability to perform a contract or incapacity to perform the service involved. Thus, publication of an advertisement under a deed of trust that had been satisfied, narrating that the bond was past due and unpaid, is not libelous, without proof of special damages, Spurlock v. Lombard Inv. Co., 59 Mo.App. 225, and it is not actionable to say of a man that he has refused to pay a certain promissory note. Hirshfield v. Ft. Worth Nat. Bank, 83 Tex. 452, 18 S.W. 743, 15 L.R.A. 639.

▇▇▇ Other evidence on which respondents rely to justify a $10,000 award is the testimony with respect to Coonis' negotiation of a lucrative contract with The Springday Company, which was not one of the customers on the route when Rogers purchased the business. Under this contract, which provided for the hauling of Springday's trash beginning in July, 1965, Coonis' assignee was paid $10,962 through March, 1966. Procuring the Springday contract, however, cannot be made the basis of an award of substantial damages under Count I, for several reasons. The Springday claim is beyond the scope of the pleadings. Count I is restricted to a claim for damages for procuring the *cancellation of existing contracts* with respondents. Springday and respondents had no contract with each other at any time. The pleading was not broadened to include the Springday claim by the admission of unobjected-to evidence, because this evidence was responsive to the issue on the claim of damages for breach of Coonis' contractual agreement not to compete. Joroco made that claim the subject of separate Count VI of the counterclaim, wherein Joroco prayed for $6,323.50 damages against Coonis and his assignee for operating a collection business in violation of the contract provision giving Rogers exclusive rights in the area in question for a period of ten years. The court found against Joroco on Count VI. No appeal was taken from the judgment on Count VI. The issue of damages for breach of the agreement not to compete was therefore finally adjudicated in favor of Coonis and against respondents. Furthermore, in a suit for loss of profits of a business venture the measure of damages is what the complainant lost by reason of the breach of contract and not what the other party has gained thereby. Peltz et al. v. Eichele, 62 Mo. 171, 180. There is no evidence that Rogers and Joroco lost the Springday account because of Coonis' breach of the contract with Rogers. There is nothing to indicate that Rogers or Joroco would have obtained the Springday account if Coonis and his assignee had not secured it. Springday had the right to reject any and all bids. See Hardison v. Reel, 154 N.C. 273, 70 S.E. 463, 34 L.R.A., N.S., 1098.

▇▇▇ On the charge that Coonis put sugar in Rogers' gas tank: Rogers' wife testified that one night about midnight she heard a car drive into Rogers' yard; heard noise around Rogers' garbage collection truck; heard Coonis say "There, that does it"; that she had known Coonis 4 or 5 years and could recognize his voice; that she ran outside and saw Coonis sitting in his car "halfway in and halfway out with interior light on." Rogers' son corroborated the fact that Coonis was present. Coonis admitted that he was there on the evening in question. There was testimony that the sheriff was called and that sugar was found in the gas tank. A deputy sheriff testified that his investigation of the truck revealed a white substance inside and outside the

tank and that the substance tasted like sugar. On this evidence we find Coonis put sugar in the gasoline tank of Rogers' truck; that Rogers was thereby damaged in the sum of $70, and that this sum must be included in the final judgment rendered on Count I of the counterclaim.

Our conclusion on said Count I is that the evidence was sufficient to support a judgment for defendants Rogers and Joroco on the question of liability but insufficient to support a judgment for them in the amount of $10,000. The issue of liability was fully and fairly tried. There is no necessity of retrying that issue in order to assure a fair result. Guiley v. Lowe, Mo. Sup., 314 S.W.2d 232, 239. The issue of damages was not properly tried. The only damages actually proved were those relating to the putting of sugar in the gasoline tank. The issues on the other items of alleged damage should be retried (excepting, however, the alleged damages on the Springday account).

#### Count II.

In this count defendants Rogers and Joroco, realleging all of the allegations of Count I, further alleged that the actions of plaintiff and the corporation were prompted by malice and were done maliciously, willfully, fraudulently and without legal justification or excuse, and prayed for $10,000 as punitive damages. The court awarded $2,000 damages on Count II. Appellants contend that there is no evidence from which the court could find that they were guilty of willful or wanton misconduct, or that actual damages had been incurred. They claim to have acted in good faith, by resorting to the courts by filing an action in replevin for the vehicle and containers, when respondents failed to make the payment due April 20, 1965.

 In the absence of an abuse of discretion an appellate court is not justified in interfering with an assessment of punitive damages. Seested v. Post Printing & Publishing Co., 326 Mo. 559, 31 S.W.2d 1045,

1054. There was no abuse of discretion in awarding punitive damages against these appellants, who breached the noncompetition provisions of the contract; violated the court injunction by continuing to serve old customers and solicit new ones in the prohibited area after the restraining order had issued and put sugar in Rogers' gasoline truck tank. That Coonis entertained a genuine animus toward Rogers is exemplified by his telling one Bowler that if Rogers went on the north side to collect trash (there was concededly nothing in the contract to prohibit Rogers from operating anywhere in the city) he, Coonis, "would put a truck on and pick it up for nothing if he had to."

 We recognize the rule that actual or nominal damages must be recovered before punitive damages can be awarded. Scheid v. Pinkham, Mo.App., 394 S.W.2d 570, 572; Adelstein v. Jefferson Bank & Trust Co., Mo.Sup., 377 S.W.2d 247, 252. The $70 awarded as actual damages for putting sugar in the gasoline tank is alone sufficient to sustain the award of punitive damages.

#### Count IX.

 In this count Rogers and Joroco, under Civil Rule 99.12, V.A.M.R., prayed for judgment against Coonis for the value of a 1959 Ford truck, attached equipment, and a number of metal barrel containers, taken into Coonis' possession by a writ of replevin at the outset of this litigation, on the ground that at the time of the taking the property was in the lawful possession of Rogers and Joroco, and that as a result of the taking they were required to replace the property with other property so as to continue their business. The court's finding on Count IX follows: "Under Count IX of Defendants' Amended Counterclaim the Court awards damages in the amount of $7,-500.00 to defendants Johnie E. Rogers and Joroco Enterprises, Inc." The judgment thereon follows: "that defendants, Johnie E. Rogers and Joroco Enterprises, Inc., have

and recover of plaintiff, Lee Coonis the sum of Seven Thousand Five Hundred Dollars ($7,500.00) on Count IX of Defendants' Amended Counterclaim." Appellants contend that the court erred in entering a general judgment on Count IX without separately assessing the value of the property involved and the damages for taking and detaining the same, as required by Civil Rules 99.11 and 99.12, and for the further reason that there was "no evidence from which the court could find either (1) that the value of the property in question was $7,500.00 at the time of trial, or (2) that the damages for taking and detaining the same were $7,500.-00 or, (3) that the total of the value and damages amounted to $7,500.00." This point must be sustained. The only evidence as to the value of the truck was its value in 1964 and in May, 1965 (the time of the taking under the writ of replevin). There was no testimony with reference to its value at the time of the trial in April, 1966. The same is true as to the metal barrel containers. "In a replevin action, the value of the property is to be assessed as of the date of the trial, and not as of the time of taking, save for those instances (of which this is not one) where the party taking possession has destroyed, sold, or dissipated the property so that no value can be put upon it at the time of the trial." Union House Furnishing Co. v. Woods, Mo.App., 39 S.W.2d 448, 449. And see Huntington v. Jamieson, Mo.App., 50 S.W.2d 705, 707 and Fergusson v. Comfort, 194 Mo.App. 423, 184 S.W. 1192, 1194. There is, therefore, no evidence to sustain the judgment of $7,500 if it represents the value of the property at the time of the trial. We cannot tell, however, whether the $7,-500 awarded by the court represents the value of the property or represents damages for taking and detaining the property, or both. As stated by appellants, " * * * nowhere in the record is there any evidence whatsoever that relates to loss or damage to respondent[s] for the taking of the property. The respondents made no effort to show that the property depreciated in value, nor that they suffered any loss because they were deprived of the use of the property, nor that they were damaged in any other way." Furthermore, it appears that respondents were not the absolute owners of the property, having only a special or limited interest therein. In such case the value of such special interest only should be assessed, together with damages for taking and detaining, if any. Sanders v. Brooks, 239 Mo.App. 578, 194 S.W.2d 540, and cases cited, l. c. 542.

Therefore, because the judgment does not separately assess the value of the property and the damages for taking and detaining the same; because there is no evidence to support the judgment rendered, and nothing to show that the court undertook to value respondents' special interest only, the judgment on Count IX cannot stand, and the cause thereon must be reversed and remanded. Sanders v. Brooks, supra; Union House Furnishing Co. v. Woods, supra; National Theatre Supply Co. v. Scovill, 223 Mo.App. 968, 22 S.W.2d 68.

The judgment on Count I of the Amended Counterclaim is reversed and the cause remanded with directions to retry only the issue of the amount of damages to be awarded to Rogers and Joroco and to enter a new judgment for them on said count in the amount thus determined. The judgment on Count II of the Amended Counterclaim is affirmed. The judgment on Count IX of the Amended Counterclaim is reversed and the cause is remanded for a new trial of the issues raised in said Count IX. All judgments shall be held in abeyance until the issues on said Counts I and IX are finally settled, at which time final judgment consistent with this opinion and with the outcome of the new trial of said Counts I and IX shall be entered. Yahlem Motor Co. v. McCord, Mo.App., 299 S.W. 49.

WELBORN, C., not sitting.

HIGGINS, C., concurs.

# 718

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.