JOE GARAVELLI'S RESTAURANT, INC., Plaintiff/Respondent,

v.

COLONIAL SQUARE ASSOCIATES, L.P., Defendant/Appellant.

No. ED 76297.

Missouri Court of Appeals, Eastern District, Division Five.

June 30, 2000.

Leo V. Garvin, Jr., Paul M. Maloney, St. Louis, for appellant.

Martin M. Green, Joe D. Jacobson, Jonathan F. Andres, Clayton, for respondent.

CHARLES B. BLACKMAR, Sr. J.

Joe Garavelli's Restaurant, Inc., a Missouri corporation, filed suit against Colonial Square Associates, L.P., a limited partnership, seeking damages for breach of contract on account of the cancellation of a lease for restaurant premises. The trial court entered judgment for plaintiff Garavelli's in the amount of $360,000. Defendant Colonial appeals. We affirm. We adopt our statement of the case from the statement in Colonial's brief, which Garavelli's has not challenged.

Garavelli's purchased a restaurant business located in Colonial Shopping Center in December of 1990 and operated this restaurant until September 14, 1996, when the premises were seriously damaged by fire. Colonial then exercised its option to terminate the existing lease because the premises could not be restored within 45 days.

The parties then negotiated a new lease, reaching agreement in January of 1997. The new lease was for a term of five years, with rent to begin when Garavelli's reopened for business, and with a five-year option for renewal by the lessee. The lease contained a provision reading as follows:

*63. RESTORED PREMISES:*

63.0 Upon execution of this lease by both parties, and within ten (10) business days of same, both Lessor and Lessee shall have plans and specifications drawn showing proposed improvements of each party to the leased premises and shall present same to the other for review and approval. If within five (5) business days of presentation of plans and specifications, Lessor and Lessee cannot agree on the scope and/or quality of each party's work as set forth in said plans and specifications, either party may cancel this lease by written notice to the other.

By letter dated February 6, 1997, the parties agreed that the ten (10) day period for submission and approval of the plans and specifications was not realistic, and removed that time limitation from the agreement. The remainder of the lease terms remained in effect. The letter also specifically set forth the restoration work that was to be undertaken by Colonial. All remaining work was to be completed by Garavelli's.

Immediately after the fire Colonial retained Shanfeld Construction Services to act as its general contractor in connection with the center. After execution of the new lease Shanfeld was instructed by Colonial to incorporate plans and specifications for Colonial's part of the restoration of the restaurant premises into plans and specifications for the restoration of the entire building shell. The plans and specifications for Colonial's part of the restaurant restoration were completed by Shanfeld on March 14, 1997. Required permits were quickly obtained.

On March 26, 1997, Colonial presented the plans and specifications setting forth the scope and quality of its portion of the restoration work to Garavelli's for approval. Garavelli's indicated approval, with a few exceptions noted on the front page of the plans. There is no indication that Colonial disagreed with these notations.

Shanfeld obtained bids from subcontractors for Colonial's part of the work of restoration and received authorization to proceed. It was necessary for Shanfeld to complete the work on the shell of the building before Garavelli's part of the restaurant work could begin.

Shanfeld commenced work during the first week of June in 1997 but realized that it could not practically complete the work before Garavelli's had commenced and concluded its part of the restoration. Otherwise Garavelli's would have had to tear out some of Colonial's work.

Garavelli's, in April 1997, retained Shanfeld to prepare the plans and specifications for its part of the work, which were completed on June 26, 1997. Garavelli's president, Hawatmeh, testified, and the jury could have found, that he instructed Shanfeld to present these plans to Colonial for approval. Hawatmeh requested that Shanfeld submit a bid for Garavelli's part of the restoration. Shanfeld obtained bids from subcontractors and submitted such a bid on July 10, 1997. Garavelli's considered this bid too high and sought a second bid from Pernikoff Construction, which was lower than Shanfeld's bid by about $75,000.

The parties met on July 24, 1997. Hawatmeh advised Colonial that he did not intend to use Shanfeld for Garavelli's part of the work because of the price. Colonial was concerned about having two general contractors working on the site at the same time and solicited a bid from Pernikoff for the remaining part of its work.

On August 4, 1997 Colonial wrote Garavelli's, proposing (1) that Pernikoff be the contractor for all remaining work, under Garavelli's supervision; (2) that Colonial make an allowance of $60,352 to Garavelli's for its remaining work, this being the amount of Pernikoff's bid for that work; (3) that, inasmuch as Pernikoff had estimated that the remaining work would consume 45 days, the rent begin on October 1, 1997; and (4) that Garavelli's reimburse Colonial in the amount of $3574 for an additional air conditioning unit and $5054 for an additional sprinkler unit.

Garavelli's reviewed this proposal with its attorney, and the attorneys for the parties had several meetings. Garavelli's advised Colonial that the proposed agreement was not acceptable, and that it would honor its obligations under the lease of January 14, 1997 and the modification by letter agreement of February 6, 1997.

Under date of September 3, 1997, Colonial wrote Garavelli's a letter, praising itself for its diligence in the premises and uttering sharp criticism of Garavelli's. The concluding paragraph read as follows:

Under the circumstances, you have left us with no choice but to inform you that we will not proceed further with you. The lease which was in effect prior to the fire was cancelled. The lease dated January 14, 1997 has never gone into effect. To avoid any question, however, to the extent that the "new lease" exists, we hereby cancel same in accordance with its Section 63 since the parties cannot agree on the scope and/or quality of each party's work.

Further discussions proved futile, and this suit was filed on April 27, 1998. Of the several counts, only the breach of contract claim was submitted to the jury.

### 1. Submissibility

■ In its first point Colonial asserts error in overruling its motion for directed verdict

because plaintiff failed to adduce evidence of any agreement between the parties with respect to the quality and scope of the reconstruction work to be performed by each of them as required by Paragraph 63 of the lease agreement.

The only cases cited are completely unrelated on the facts and hold simply that unambiguous contracts should be enforced as they are written.

■ The time requirements of the new lease were modified by the letter agree-

ment of February 6, 1997. To the extent that there are variations, the language of the latter agreement prevails. *Boyd v. Lane,* 869 S.W.2d 305, 309 (Mo.App.1994).

■ In determining submissibility we of course view the evidence from the plaintiff's standpoint and give no regard to conflicting testimony adduced by the defendant. *Steward v. Goetz,* 945 S.W.2d 520, 528 (Mo.App.1997). We afford the plaintiff all reasonable inferences from the evidence. *Id.* In this particular case, furthermore, the verdict-directing jury instructions are not contained in the legal file, and we may sustain the judgment if the evidence demonstrates any theory of recovery recognized by the law. *Dwyer, Costello, and Knox, P.C. v. Diak,* 846 S.W.2d 742, 747 (Mo.App.1993).

The jury could have found that there was substantial agreement on the scope and quality of the work in the letter agreement of February 6, 1997, and that this agreement was confirmed no later than July 10, 1997, when Shanfeld submitted a bid for Garavelli's part of the construction work. Colonial directed Garavelli's to submit its plans to Shanfeld. Colonial argues that the record does not show that these plans were ever submitted to or approved by Colonial, but they were readily available to Colonial and, at a meeting of the parties on July 24, 1997, there is no indication that Colonial was not satisfied with Garavelli's plans. In the letter of August 4, 1997, Colonial indicated its willingness to have Garavelli's proposed contractor, Pernikoff, proceed with the work remaining for both parties.

The August 4 letter contained proposals that Garavelli's was not required to accept. The parties' written agreement fixed the date for rent to begin by reference to the opening of the new facility, and Garavelli's was not obliged to accept a fixed date based on the contractor's estimate. Even though Garavelli's had brought Pernikoff into the picture, it had no duty to undertake supervision over the portion of the work remaining for Colonial. The two

monetary items mentioned in the letter appear to deal with minor disagreements or "extras," and are not shown to be fundamental to the contract. From the record the jury could have found that Garavelli's was within its rights in saying that it would perform in accordance with the new lease as modified, and was not obliged to accept the further modifications requested by Colonial. *See Gilmartin Bros., Inc. v. Kern,* 916 S.W.2d 324, 331 (Mo.App.1995).

It follows that Colonial was not justified in canceling the new lease as modified and that Garavelli's made a case for breach of contract.

### 2. Evidence of Damages

■ Colonial's second point asserts error in overruling the exception to the instruction on damages, asserting that

> plaintiff should not have been permitted to argue for lost profits because plaintiff failed to adduce sufficient evidence to form a basis for future damages.

Colonial has failed to follow the requirements of Rule 84.04(e) because the challenged instruction is not set out in or appended to its brief. The essence of its claim, however, is that there was no substantial evidence supporting the claim of future profit, so that the evidence does not support the award of any damages, and the trial court was apprised of this assertion on several occasions. We will therefore review the merits of that claim.

The cases cited do not support this claim. In *Coonis v. Rogers,* 429 S.W.2d 709, 714 (Mo.1968), the court enunciated the established rule that one seeking recovery for lost future profits must demonstrate a reasonable probability that future operations will be profitable. That case found fault with the plaintiff rubbish collector's evidence because it covered only gross receipts while saying nothing about expenses such as costs of collecting trash and depreciation on the heavy equipment required. In *All Star Amusement, Inc. v. Jones,* 727 S.W.2d 930 (Mo.App.1987), the

evidence showed the same fault. In *Jack L. Baker Cos. v. Pasley Mfg. & Distrib. Co.*, 413 S.W.2d 268, 271 (Mo.1967), the evidence showed loss in one year, profit the next, and loss the third. This was held insufficient to support an inference that future operations would be profitable.

Garavelli's produced an accountant who had prepared its financial statements since 1990, and had prepared statements for its predecessor from 1978. He testified that the restaurant at the Manchester location had always turned a profit. Income tax returns for the period were also in evidence and showed a loss for tax purposes, which the witness explained by showing that accelerated depreciation and amortization deductions had been allowed for tax purposes, but were not cash items and were not appropriate on an operating statement. He expressed the opinion that the Manchester restaurant had a good reputation and a good location, so that profits could be expected for future years.

Colonial asserts that the accountant's testimony was fatally flawed because it did not take account of depreciation, citing *Coonis*. The point is not well taken. The witness considered the question of depreciation and explained why, in his opinion, it did not affect his conclusion as to profitability. The statements and tax returns contained detailed information about operations, and the witness was subject to cross-examination as to items alleged to be missing from the statements he prepared.

In *Whitman's Candies v. Pet, Inc.*, 974 S.W.2d 519, 525–26 (Mo.App.1998), the court considered some of the recent cases on recovery for lost profits and points out that, while the claimant must demonstrate a reasonable probability of future profits, more flexibility is allowed in establishing the appropriate recovery for such profits, and mathematical precision is neither required nor possible. There was ample evidence, here, that Garavelli's could expect profitable operations for the five-year term of the lease and the guaranteed option for five more years.

■ The amount of the verdict, furthermore, is substantially less than it could have been if the jury had awarded the average profit shown in the accountant's statements for the full ten years, or had made a substantial award for other damage items. There was evidence that Garvelli's had spent $300,000 for equipment which was of no use to it and that the new lease reserved a rent substantially below the prevailing rate. It is quite possible that the jury gave attention to the criticisms of the accountant's testimony in Colonial's cross-examination and argument. It is appropriate to consider what was asked and what was awarded in determining whether there was prejudice in the damage award. *Whitman's Candies*, 974 S.W.2d at 525; *Anuhco, Inc. v. Westinghouse Credit Corp.*, 883 S.W.2d 910, 924 (Mo.App.1994).

The evidence supports the verdict as to damages.

## 3. Receipt of Prejudicial Evidence

■ Colonial's final point finds error in permitting plaintiff to offer false and misleading evidence to the jury, over defendant's objection, that defendant had requested several extensions from plaintiff's representative to complete restoration work at the shopping center.

The apparent grievance is in allowing counsel to present the witness as "a representative of the plaintiff" when he was in fact an adjuster retained by Garavelli's fire insurance company. He testified that a representative of Colonial had asked him for two extensions of time to complete certain phases of the reconstruction. This alleged representative was an agent of the insurance company which insured Colonial's fire damage.

Both parties had insurance coverage but agreed that insurance was not to be mentioned. Both were walking on tiptoe to avoid any indication of insurance. The court had no authority to disqualify a wit-

ness who had been regularly on the premises. Whether his testimony was "false" was for the jury to decide. If he was inaccurately held out as a representative of Garavelli's, it is difficult to see how Colonial was prejudiced. The jury might be inclined to give less weight to the testimony of a person affiliated with one of the parties.

Each party suggested, at times, that the other was foot dragging. Colonial's suggestions in the letters of August 4 and September 2 were particularly shrill. There was no ultimate issue of timeliness, and so we do not perceive prejudice in the witness's testimony.

The judgment is affirmed.

MARY RHODES RUSSELL, C.J., and LAWRENCE G. CRAHAN, J. concur.